Michael Anthony FULLER, Appellant,

v.

The STATE of Texas.

No. 1283–98.

Court of Criminal Appeals of Texas, En Banc.

March 27, 2002.

Michael Logan Ware, Fort Worth, for Appellant.

Matthew Paul, State's Attorney, Austin, for State.

## OPINION

HERVEY, J., delivered the opinion of the Court in which MEYERS, PRICE, HOLCOMB and COCHRAN, JJ., joined.

A jury convicted appellant of "injury to an elderly individual." *See* Section 22.04(a), Texas Penal Code. The Court of Appeals acquitted appellant after deciding that the evidence was insufficient to support his conviction. *See Fuller v. State,* slip op. at 2–3 (Tex.App.—Waco, No. 10–98–019–CR, delivered May 27, 1998, pet. granted) (nonpublished). We reverse.

The indictment alleged that appellant committed the offense against "Olen M. Fuller" who is appellant's father. The prosecution proved that appellant injured his elderly father by hitting him in the face with his fist. During trial, however, appellant's father was only referred to as "Mr. Fuller" or as "Buddy." The prosecution presented no evidence that appellant's father was "Olen M. Fuller." Consistent with the indictment's allegation, the charge instructed the jury to convict if it found appellant committed the offense against "Olen M. Fuller."

Appellant claimed on direct appeal that the evidence was insufficient to support his conviction because the prosecution failed to prove the victim's name as alleged in the indictment. The Court of Appeals decided, as a matter of federal constitutional law under *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), that the evidence was insufficient to support appellant's conviction because "the name of the complaining witness is material to an indictment and must be alleged and proven." *See Fuller,* slip op. at 2. The Court of Appeals also decided that a "hypothetically correct jury charge" required the prosecution to prove the victim's name

as alleged in the indictment. *Fuller*, slip op. at 3 fn 3.

We granted the State Prosecuting Attorney's discretionary review petition which claims this is not a *Jackson v. Virginia* case but, rather, a variance case. The State Prosecuting Attorney, therefore, argues that the Court of Appeals erred in reversing appellant's conviction without first making a materiality inquiry into whether the variance between the indictment's allegation of "Olen M. Fuller" and the proof at trial of "Mr. Fuller" or "Buddy" prejudiced appellant. Appellant claims the evidence was insufficient to support his conviction as a matter of federal constitutional law under *Jackson v. Virginia*. Appellant, therefore, argues that it is unnecessary to consider the State's variance claim.

## I.

*Jackson v. Virginia* sets out the federal constitutional due process standard by which to measure evidentiary sufficiency. This standard measures evidentiary sufficiency against the "substantive elements of the criminal offense as defined by state law." *See Jackson*, 99 S.Ct. at 2792 fn. 16.

We recently decided in *Gollihar v. State* that under *Malik v. State* evidentiary sufficiency should be measured against the "elements of the offense as defined by the hypothetically correct jury charge for the case" in all sufficiency cases. *See Gollihar v. State*, 46 S.W.3d 243, 255–56 (Tex.Cr. App.2001); *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Cr.App.1997). *Gollihar* rejected the view that *Malik* was a federal constitutional decision which adopted only the *Jackson v. Virginia* evidentiary sufficiency standard. *See Gollihar*, 46 S.W.3d at 252–57, 255–56 fn. 20, 255. *Gollihar* further rejected the notion that *Malik*'s "hypothetically correct jury charge for the case" language did not apply in a sufficiency

analysis unless the case involved a jury charge error like the one in *Malik*. *Compare Gollihar*, 46 S.W.3d at 252–57, 255–56 fn. 20, 255 (*Malik's* "hypothetically correct jury charge for the case" language "controls sufficiency of the evidence analysis *even in the absence of alleged jury charge error*") (emphasis in original), *with Planter v. State*, 9 S.W.3d 156, 159–61 (Tex.Cr. App.1999) (McCormick, P.J., dissenting) (setting out the view which *Gollihar* rejected).

■ *Gollihar* thus made *Malik's* evidentiary sufficiency standard into a purely state law standard that is "foreign to federal constitutional norms." *Compare Malik*, 953 S.W.2d at 238; *Bledsue v. Johnson*, 188 F.3d 250, 257–62 (5th Cir.1999) (characterizing *Malik's* evidentiary sufficiency standard as a state law doctrine); *Brown v. Collins*, 937 F.2d 175, 182 (5th Cir.1991) (characterizing pre-*Malik* evidentiary sufficiency standard as a "state procedural nuance foreign to federal constitutional norms" even though our decisions claimed this standard was consistent with federal constitutional law). *Gollihar's* standard of measuring evidentiary sufficiency against the "elements of the offense as defined by the hypothetically correct jury charge for the case" clearly is not the same as the *Jackson v. Virginia* standard of measuring evidentiary sufficiency against the "substantive elements of the criminal offense as defined by state law." *Compare Jackson*, 99 S.Ct. at 2792 fn. 16, with, *Gollihar*, 46 S.W.3d at 255. *Gollihar*, therefore, does not apply to appellant's *Jackson v. Virginia* evidentiary sufficiency claim.

■ The federal constitutional issue in this case is whether the victim's name is a substantive element of the criminal offense as defined by state law. *See Jackson*, 99 S.Ct. at 2792 fn. 16. State law, in relevant part, defines "element of the offense" as

the forbidden conduct with the required culpability. *See* Section 1.07(a)(22)(A) & (B), Texas Penal Code. State law in Section 22.04(a)(3) further defines the offense as "injury to an elderly individual." [1] State law does not define the victim's name as a substantive element of the offense by, for example, defining the offense as "injury to an elderly individual named Olen M. Fuller."

The prosecution's failure to prove the victim's name exactly as alleged in the indictment does not, therefore, make the evidence insufficient to support appellant's conviction under *Jackson v. Virginia*. The evidence that appellant injured the elderly victim by hitting him in the face with his fist satisfies the *Jackson v. Virginia* standard because it constitutes proof of every fact necessary to constitute the crime charged of "injury to an elderly individual." *See* Section 1.07(a)(22); Section 22.04(a)(3); *Gollihar*, 46 S.W.3d at 246 (*Jackson v. Virginia* standard "protects the accused against conviction except upon *proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged*") (emphasis in original).

## II.

■ We must now decide whether the evidence was sufficient to support appellant's conviction under *Gollihar's* state law sufficiency standard. In addressing this claim, we must recognize that *Gollihar* also decided that a materiality inquiry

should be made in all cases, like this one, that involve a "sufficiency of the evidence claim based upon a variance between the indictment and the proof" and that only a "material" variance will render the evidence insufficient. *See Gollihar*, 46 S.W.3d at 257. In making a materiality inquiry applicable to all variance cases, *Gollihar* criticized our decision in *Pedrosa v. State*, a similar variance case, which did not apply a materiality inquiry to the prosecution's failure to prove the victim's name exactly as alleged in the indictment. *See Gollihar*, 46 S.W.3d at 249 criticizing this Court's failure to apply materiality inquiry in *Pedrosa v. State*, 155 Tex.Crim. 155, 232 S.W.2d 733, 735 (1950) (reversing defendant's rape conviction because indictment alleged defendant raped "Seanda" but evidence showed rape victim's name was "Senaida").

■ *Gollihar* also decided that this "materiality" inquiry requires a determination of whether the variance deprived the defendant of notice of the charges or whether the variance subjects the defendant to the risk of later being prosecuted for the same offense. *See Gollihar*, 46 S.W.3d at 257. And, finally, *Gollihar* also decided that a "hypothetically correct jury charge" takes into consideration the material variance doctrine, meaning that "[a]llegations giving rise to immaterial variances may be disregarded in the hypothetically correct charge, but allegations giving rise to material variances must be included." *See Gollihar*, 46 S.W.3d at 257.[2]

---

1. Section 22.04(a)(3) provides that a "person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child, elderly individual, or disabled individual bodily injury."

2. Since *Gollihar* recognized that a material variance usually presents only a notice problem and that a material variance does not, like a "standard insufficiency claim," present

a problem of the government's failure to prove the defendant guilty of the crime charged, this raises the question of whether we may apply our traditional state-law remedy of a remand for a new trial for a "material" variance. *See Gollihar*, 46 S.W.3d at 247–48 fn. 6, 248 fn. 7, 257; see also *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 2149–51, 57 L.Ed.2d 1 (1978) (requiring state appellate courts to provide a remedy tanta-

## III.

In this case, the prosecution's failure to prove the victim's name exactly as alleged in the indictment does not make the evidence insufficient under *Gollihar*. The victim's name is not a statutory element of the offense. *See Gollihar*, 46 S.W.3d at 254 ("hypothetically correct jury charge" encompasses statutory elements of the offense as modified by the charging instrument).

The variance between the indictment and the proof is also immaterial. There is no indication in the record that appellant did not know whom he was accused of injuring or that he was surprised by the proof at trial. *See Gollihar*, 46 S.W.3d at 257. Finally, the variance does not subject appellant to another prosecution for the same offense. *See id.*

The judgment of the Court of Appeals is reversed and the case is remanded there for further proceedings.

KELLER, P.J., filed a concurring opinion.

WOMACK, J., filed a concurring opinion in which KELLER, P.J., and JOHNSON, J., joined.

KEASLER, J., filed a dissenting opinion.

KELLER, P.J., filed a concurring opinion.

I disagree with the Court's conclusion that *Malik* and *Gollihar* impose state-law rules, and I write separately to explain how the law of variances operates in the legal sufficiency arena.

### A. GENERAL PRINCIPLES

Due process is the touchstone of the legal sufficiency review, and the standard formulated in *Malik* is simply the vehicle designed to implement the federal constitutional protection.[1] The Supreme Court's opinion in *Jackson* requires that evidentiary sufficiency be measured by the substantive elements of the offense as defined by state law.[2] In *Malik*, we set forth the standard for ascertaining what those elements are: "the elements of the offense as defined by the hypothetically correct jury charge for the case."[3] We further explained that a hypothetically correct charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."[4]

Subsequent cases have further developed the standard set forth in *Malik*, as various facets of evidentiary sufficiency law were raised before us. In *Curry*, we

mount to an appellate acquittal only when they determine that the evidence is insufficient to support a defendant's conviction "due to a failure of proof at trial" with "respect to the guilt or innocence of the defendant"); for pre-*Burks* cases that provided remedy of remand for a new trial following appellate reversal of conviction for a material variance under state law *see Payne v. State*, 487 S.W.2d 71, 74 (Tex.Cr.App.1972); *Carlisle v. State*, 130 Tex.Crim. 246, 93 S.W.2d 730, 730–31 (App.1936); *Morgan v. State*, 128 Tex.Crim. 290, 80 S.W.2d 975, 976 (App.1935); *Moore v. State*, 84 Tex.Crim. 256, 206 S.W. 683, 684

(App.1918); *Presley v. State*, 24 Tex.App. 494, 6 S.W. 540 (1887).

**1.** *Malik v. State*, 953 S.W.2d 234, 239–240 (Tex.Crim.App.1997).

**2.** *Jackson v. Virginia*, 443 U.S. 307, 324 n. 16, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)

**3.** *Malik*, 953 S.W.2d at 240.

**4.** *Id.* We noted that this list is not necessarily exclusive. *Id.* at 240 n. 5.

explored what is meant by being "authorized by the indictment."[5] We held this phrase to mean that a sufficiency review must encompass "the statutory elements of the offense ... as modified by the charging instrument."[6] When a statute lists more than one method of committing an offense, and the indictment alleges some, but not all, of the statutorily listed methods, the State is limited to the methods alleged.[7]

In *Gollihar*, we addressed the sufficiency implications of a variance between the indictment and the evidence at trial.[8] We held that, under the hypothetically correct jury charge, "only a 'material' variance will render the evidence insufficient."[9] In arriving at this holding, we discussed two purposes of the doctrine against variances: notice and jeopardy preclusion—an indictment should give the defendant enough notice of the crime to allow him to prepare an adequate defense at trial and it should preclude the defendant from being prosecuted later for the same crime.[10] The variance at issue in the case was the difference between the go-cart model number alleged in the indictment and the number proved at trial.[11] In holding that the variance was not material, we remarked that the State was not required to plead the model number and that the defendant's defensive theory was not impacted by the variance.[12] We also held that the variance would not place the defendant in danger of

being prosecuted again for the same offense.[13]

The variance at issue in the present case requires a deeper examination of the variance doctrine and its relationship to evidentiary sufficiency. Unlike the go-cart model number in *Gollihar*, at least part of the complainant's name is required by law to be in the indictment,[14] and at least part of what was required—the first initial of the first name—was not specifically proven at trial. The resolution of the present case becomes clear, however, once we distinguish between different types of variances and how they relate to evidentiary sufficiency.

## B. TYPES OF VARIANCES

### 1. Statutorily-enumerated elements

One type of "variance" involves the State's failure to prove a statutorily-enumerated element pled in the indictment. We addressed this type of situation in *Curry* and *Planter*. In *Curry*, the indictment alleged only one of the two possible ways to "abduct" someone: using or threatening to use deadly force.[15] The State could not expand the bases of the defendant's liability to include the other definition of "abduct" contained in the statute because the indictment limited the State to the version of "abduct" that was alleged.[16] Likewise, in *Planter*, the State

---

**5.** *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim.App.2000).

**6.** *Id.*

**7.** *Id.* at 404–405; *Gollihar v. State*, 46 S.W.3d 243, 254–255 (Tex.Crim.App.2001).

**8.** *See Gollihar, supra.*

**9.** *Id.* at 257.

**10.** *Id.* at 248 & 257

**11.** *Id.* at 244.

**12.** *Id.* at 258. The defendant admitted that he took the go-cart but claimed that he thought it had been paid for. *Id.*

**13.** *Id.*

**14.** Tex.Code Crim. Proc., Art. 21.07.

**15.** *Curry,* 30 S.W.3d at 405.

**16.** *Id.*

was limited to the theory of solicitation of capital murder alleged in the indictment.[17] The Penal Code provides two different methods of committing murder for hire: 1) by committing the murder for remuneration or the promise of remuneration, and 2) by employing another to commit the murder for remuneration or the promise of remuneration.[18] The indictment in *Planter* alleged solicitation of capital murder under the first method but not the second.[19] But the evidence at trial showed the second method but not the first.[20]

Neither of these decisions characterized the issue as one of "variance."[21] And with good reason. When an appellate court finds a variance, it is ordinarily prompted to determine whether the variance is material. But a *Curry/Planter* variance is *always* material. The State cannot "substantially" prove a statutorily-enumerated element of the offense; the element is proven or it is not proven. So while one could call that situation a "variance," it is not the type of variance that calls for a materiality determination.

### 2. Non-statutory facts defining allowable units of prosecution

But what about allegations that are not found in the relevant statutory provision, such as the identity of the victim in a murder case, a description of the items taken in a theft case, or the type of weapon used in an assault case? As discussed above, under *Malik*, one of the characteristics of a hypothetically correct jury charge is that it "adequately describes the particular offense for which the defendant was tried." What is an adequate description? The State may not be bound by *overly* descriptive indictment allegations, but by the same token, the hypothetically correct jury charge cannot be invoked "to wholly re-write the indictment to charge a different offense."[22] When, if ever, does a variance in proof involving a non-statutory indictment allegation establish a different offense from the one alleged?

The answer to these questions turns on the concept of jeopardy-preclusion. While a lack of notice may implicate due process, it does not implicate sufficiency concerns. If a defendant fails to receive proper notice, the remedy is to give him that notice, in a new trial if necessary, not to terminate the prosecution. But double jeopardy rights *do* involve an interest in terminating the prosecution. And that interest is implicated when a particular fact is used to distinguish one offense from another. In double jeopardy parlance, such a fact is one that defines the "allowable unit of prosecution."[23]

For example, a defendant who murders two people has committed two offenses, not one. In a given case, the statutorily-enumerated elements of the two murders could be the same, but the identity of the

---

17. *Planter v. State*, 9 S.W.3d 156, 159 (Tex. Crim.App.1999).

18. § 19.03(a)(3).

19. *Planter*, 9 S.W.3d at 159 ("The offense in the present case, as alleged in the indictment ... was that appellant 'requested, commanded and attempted to induce Lex Baquer [sic] to engage in specific conduct, namely, to kill Bob Fratt[a].' ").

20. *Id.* ("The evidence does not show that appellant attempted to request, command or attempt to induce Bacquer to kill Fratta. Instead, it shows that appellant attempted to request, command or attempt to induce Bacquer to pay appellant to kill Fratta").

21. *See Curry* and *Planter, supra*.

22. *Gollihar*, 46 S.W.3d at 253.

23. *See Sanabria v. United States*, 437 U.S. 54, 69–70, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978).

victims would nevertheless distinguish each offense from the other.[24] If the defendant is indicted for murdering Mary, but the State proves that he murdered John, protecting the defendant's double jeopardy rights requires acquitting the defendant of the murder of Mary. After such an acquittal, the State could seek an indictment alleging the murder of John. Acquittal as a remedy for a variance protects the defendant's double jeopardy interests while also allowing the State an opportunity to prosecute for the "correct" theory of the crime.

This analysis applies to any situation in which the non-statutory fact defines an allowable unit of prosecution. A defendant indicted for theft for stealing a car should not be convicted of stealing a necklace. These types of variances—involving non-statutory facts that define allowable units of prosecution—are sufficiency questions.

But non-statutory facts pose a problem because they are elements of the offense only to the extent that they distinguish one offense from another, and by so doing, protect a defendant's double jeopardy interests. There is no set formula for alleging these facts. For example, double jeopardy interests do not necessarily require proof of a murder victim's full name, or even the last name, so long as the victim is identified with sufficient particularity that a conviction or acquittal will serve as a jeopardy bar to any future prosecution for murdering that particular victim. Another example, addressed in *Gollihar*, is the description of property stolen in a theft offense. How particular must the description be? And if the description is inaccurate in the smallest detail, should the true description be considered a different offense from the description alleged? This is where the law of material variance comes

into play: the non-statutory fact alleged in the indictment must not materially vary from the non-statutory fact proved. In this way, we ensure that the defendant is not convicted of committing a different crime from the one with which he was charged, while avoiding the imposition of hypertechnical pleading and proof requirements that are not really necessary to protect the defendant's double jeopardy interests.

### 3. Other non-statutory facts

When a non-statutory fact does not define an allowable unit of prosecution, any variance involving that fact is simply a notice issue. If, for example, a murder defendant were able to show that he was surprised when the proof at trial involved a shotgun as the murder weapon, instead of a knife as alleged in the indictment, the defendant *might* be entitled to a new trial but he would not be entitled to an acquittal. In this example, there is no question that the defendant was convicted of the correct offense—murdering a particular individual; he was simply surprised by the evidence.

### C. APPLICATION

The "variance" at issue in the present case is a category two variance: a non-statutory fact defining an allowable unit of prosecution. The question is the identity of the individual appellant injured. I agree that the State's failure to specifically prove the victim's first name does not, under the facts of the case, constitute a material variance. There is no real question here that the victim proved at trial was in fact the same person alleged in the indictment. Therefore, I concur in the Court's judgment.

---

**24.** *Phillips v. State*, 787 S.W.2d 391, 394 (Tex.     Crim.App.1990).

WOMACK, J., filed a concurring opinion in which KELLER, P.J., and JOHNSON, J., joined.

This case is easily resolved by reference to *Gollihar v. State*, 46 S.W.3d 243 (Tex. Cr.App.2001), in which stolen property was alleged by its generic name, brand name, and model number, but the evidence proved its generic name, brand name, and a different model number. We held in *Gollihar* that the case presented an immaterial variance that concerned the defendant's right to notice of the particular charge against him, not a failure of proof that should result in an acquittal.

Likewise, as we hold today, this case presents a variance, not a failure of proof, and the variance is immaterial. In this case the State alleged the victim by his full name—first name, middle initial, and last name—but the witnesses referred to him by his last name and his nickname. The appellant says the evidence is therefore legally insufficient and he should have an acquittal. We are unanimous in holding that his argument is wrong, just as Gollihar's was. The disagreement among us is over two statements in the Court's opinion: one about *Malik v. State*[1] and the other about *Jackson v. Virginia*.[2]

### 1. *Malik*

The first statement is, "*Gollihar* rejected the view that *Malik* was a federal con-

stitutional decision which adopted only the *Jackson v. Virginia* evidentiary sufficiency standard. *See Gollihar* 46 S.W.3d at 252–57, 255–56 fn. 20, 255."[3] This statement is wrong as a matter of historical fact.

This is shown on one of the very pages in *Gollihar* that the Court cites, where we explicitly said our holding was made "in light of our stated policy in *Malik* to bring our state courts' sufficiency review in line with *Jackson* and federal constitutional requirements."[4] The Court does not say how and why it reads these words (and those on the other pages it cites) as "rejecting" that policy. In fact, the Court does not quote *any* words of *Gollihar*, much less explain how they cut *Malik* loose from the Due Process Clause. I have read the pages the Court cites, and I say with respect that I do not see that they did any such thing.

It is clear to me that *Malik* was a due-process decision, the point of which was that evidence is sufficient if it meets the due-process standard regardless of whether it met the higher standard imposed by an erroneous charge. It is significant that the Presiding Judge, who wrote *Malik*, agrees.[5]

To support its contrary proposition, the Court refers to *Gollihar*[6] and two Fifth Circuit decisions.[7] I believe that the Court has misread those cases.

---

1. 953 S.W.2d 234 (Tex.Cr.App.1997).

2. 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

3. *Ante* at 252.

4. *Gollihar*, 46 S.W.3d at 257.

5. *See ante* (concurring opinion of Keller, P.J.).

6. "*Gollihar* further rejected the notion that *Malik's* 'hypothetically correct jury charge for the case' language did not apply in a sufficiency analysis unless the case involved a jury

charge error like the one in *Malik*. *Compare Gollihar* [citing the same pages] *with, Planter v. State*, 9 S.W.3d 156, 159–61 (Tex.Cr.App. 1999) (McCormick, P.J., dissenting) (setting out the view which *Gollihar* rejected)." *Ante* at 252.

7. "Thus, *Malik's* evidentiary sufficiency standard [i]s a purely state law standard that is 'foreign to federal constitutional norms.' *Compare Malik*, 953 S.W.2d at 238; *Bledsue v. Johnson*, 188 F.3d 250, 257–62 (5th Cir. 1999) (characterizing *Malik's* evidentiary sufficiency standard as a state law doctrine);

The Court says that *Gollihar* "rejected" the notion that *Malik* was limited to cases of erroneous charges. True. The court's charge in *Malik* incorrectly told the jury to acquit if it did not find reasonable suspicion for a traffic-stop.[8] The charge in *Gollihar* told the jury to acquit if it did not find the appellant had stolen the property as it was alleged, including the model number;[9] this was not incorrect, just unnecessarily specific.[10] But that has nothing to do with *Malik's* employing, or not employing, the due-process standard. It means only that the *Malik* standard applies to all cases.

The Fifth Circuit opinion in *Brown v. Collins* that the Court cites is directly opposed to what the Court says today. *Brown* not only supports the position that *Malik* is a due-process case; *Brown* IS *Malik*.

Brown tried to get the federal habeas court to adopt the pre-*Malik* standard to review the evidence in his case; that is, he wanted the federal court to measure the evidence in his case against the erroneous jury charge that the trial court gave. The court of appeals refused to do this, saying that the Court of Criminal Appeals could do that if state law compelled it, but the constitutional method used the correct elements of the offense as a standard.

[Brown] finds support for this argument in a line of Texas cases which hold that the evidence presented at trial must conform to the theory of responsibility in the jury charge given, failing which, the court must enter a judgment of ac-

quittal. *See* ... *Benson v. State*, 661 S.W.2d 708 (Tex.Cr.App.1982), *cert. denied*, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984)....

We agree with Brown that under ... *Benson* his conviction would not withstand a sufficiency challenge in the Texas courts....

Brown's contention that ... *Benson* [and other cases] expose the insufficiency of the evidence presented against him overlooks the core issue in this habeas appeal: whether the evidence was constitutionally sufficient to convict him of the crime charged, not whether a state appellate court would have reversed his conviction on the basis of a state procedural nuance foreign to federal constitutional norms.

To determine sufficiency of a state conviction as a matter of *constitutional* law, we look merely to the "*substantive elements* of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n. 16, 99 S.Ct. 2781 (emphasis added), not, as Brown suggests, to a State's procedural requirements.[11]

This is exactly what we did in *Malik*. We noted that *Benson* was incorrect when it claimed to be consistent with *Jackson*, the standard of which was "the *essential elements of the crime*."[12] We overruled *Benson*, and held that "sufficiency of the evidence should be measured by the *elements of the offense* as defined by the hypothetically correct jury charge for the

---

Brown v. Collins, 937 F.2d 175, 182 (5th Cir.1991) (characterizing pre-*Malik* evidentiary sufficiency standard as a 'state procedural nuance foreign to federal constitutional norms' even though our decisions claimed this standard was consistent with federal constitutional law)." *Ante* at 252–53.

**8.** *See Malik*, 953 S.W.2d at 236.

**9.** *See Gollihar*, 46 S.W.3d at 244.

**10.** *See id.* at 256.

**11.** *Brown*, 937 F.2d at 180–81 (footnote omitted).

**12.** *Malik*, 953 S.W.2d at 236–37.

case." [13] It is *Benson* that was foreign to federal constitutional norms, and *Brown* and *Malik* that applied those norms. It seems to me that the citation to *Brown* refutes the Court's statement rather than supporting it. The federal court said in *Brown* that Texas' pre-*Malik* standard was not the constitutional standard. That's the whole point of *Malik;* to adopt the constitutional standard instead of the previous standard.

*Bledsue* is not much help to the Court's position, either. Bledsue was convicted in a Texas court of possessing 28 grams or more of amphetamine, a controlled substance. Although the Controlled Substances Act made it an aggravated offense to possess a controlled substance if "the amount of the controlled substance possessed is, by aggregate weight, including any adulterants or dilutants, 28 grams or more," [14] neither the indictment nor the court's charge mentioned adulterants or dilutants. They spoke only of 28 grams of "amphetamine." It was undisputed in the federal habeas court that Bledsue possessed no more than 17 grams of amphetamine, although the adulterants and dilutants with which it was mixed brought the weight over 28 grams. Like Brown, Bledsue wanted the federal courts to measure the sufficiency of the evidence by this Court's standard—*Malik.* [15]

The court of appeals seemed to view *Malik* as insufficient because it would be too dependent on the indictment.

In many cases, the *Malik* rule will produce an accurate list of the "essential

elements" that *Jackson* requires federal courts to review during habeas proceedings. *Jackson,* however, does not necessarily require that, for constitutional sufficiency, the elements stated in the indictment govern which "essential elements" must be measured against the evidence. *Jackson* requires only that the review occur "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson,* 443 U.S. at 324 n. 16, 99 S.Ct. 2781. [16]

The court of appeals found it unclear whether *Malik* would use a hypothetically correct jury charge that was based on a hypothetically correct indictment or one that was based on the actual indictment. [17] "At the very least, when the indictment raises ambiguities as to what the hypothetically correct jury charge should be, the *Malik* approach does not resolve a federal habeas court's inquiry into what are the essential elements of state law we should use to review Bledsue's conviction." [18]

This quandary teaches us, on habeas review, to maintain our own notions of constitutional sufficiency that are not overly dependent on state law doctrines such as *Malik.* Rather, federal habeas courts should independently analyze the governing statute, the indictment, and the jury charge to measure the constitutional sufficiency of the evidence and determine what are the *essential elements* required by the *Jackson* inquiry. [19]

*Malik* said "we recognize that measuring sufficiency by the indictment is an

---

**13.** *Id.* at 240 (emphasis added).

**14.** See Act of June 17, 1983, 68th Leg., R.S., ch. 425, § 10, 1983 Tex. Gen. Laws 2361, 2381, *repealed by* Health & Safety Code Act, 71st Leg, R.S., ch. 678, § 1, sec. 481.116, 1989 Tex. Gen. Laws 2230, 2937.

**15.** *See Bledsue,* 188 F.3d at 258.

**16.** *Id.* at 259.

**17.** *Id.* at 259–60.

**18.** *Id.* at 260.

**19.** *Ibid.*

inadequate substitute [for *Benson* ] because some important issues relating to sufficiency—e.g. the law of parties and the law of transferred intent—are not contained in the indictment. Hence, sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. Such a charge would be one that accurately sets out the law, *is authorized by the indictment,* does not *unnecessarily* increase the State's burden of proof or unnecessarily restrict the State's theories of liability, *and adequately describes the particular offense for which the defendant was tried.*" [20]

This seems to me to be essentially identical to the *Bledsue* opinion's exposition of the constitutional standard of *Jackson* (which *Malik* repeatedly said it wanted to follow). The majority of the divided panel in *Brown* may have thought *Malik* could be read otherwise; that is, read to use a standard other than *Jackson's.* But if it is read correctly, there is no difference between *Malik* and *Jackson.*

### 2. *Jackson*

As the Court reads *Jackson,* "state law" must mean only the penal statute, and general terms in the statute can never be limited by a particular description from the indictment. "State law does not define the victim's name as a substantive element of the offense by, for example, defining the offense as 'injury to an elderly individual named Olen M. Fuller.' " [21] So this problem is just a variance, not a due-process violation.

Let us apply the Court's reasoning to another statute, which defines the federal

offense of "false declarations before grand jury or court": "Whoever under oath … in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration … shall be fined under this title or imprisoned not more than five years, or both." [22]

Let us suppose a person is indicted for making false declarations in testimony before a grand jury. The indictment alleges the grand-jury testimony was inconsistent with statements made "on September 30, while under oath as a witness in a proceeding ancillary to [a court proceeding] to the degree that one of said declarations was false." The evidence is that the person made inconsistent statements not only in the September 30 proceeding, but also in a pre-trial hearing on October 21. It turns out that the September 30 proceeding did not qualify as a "proceeding ancillary" to the court proceeding, but the October 21 hearing clearly was part of the court proceeding.

Under the Court's view of *Jackson,* a federal court, applying *Jackson,* should hold that the evidence was sufficient because the perjury statute does not define "any proceeding before or ancillary to any court" as "a proceeding on September 30," so that was not an element of the offense. *Any* inconsistent statement in *any* court proceeding would meet the standard of the Due Process Clause, and this was just a variance.

Actually one did so hold, and it was reversed by the Supreme Court. Without dissent.[23] With the agreement of the government.

---

**20.** *Malik,* 953 S.W.2d at 239–40 (citation and footnote omitted, emphasis added).

**21.** *Ante* at 253.

**22.** 18 U.S.C. § 1623(a).

**23.** Justice Powell did not take part; the other members of the Court joined the opinion.

In our view, it is unnecessary to inquire, as did the Court of Appeals, whether petitioner was prejudiced by a variance between what was alleged in the indictment and what was proved at trial. For we discern no such variance. The indictment charged inconsistency between petitioner's statements in the September 30 interview and his grand jury testimony. That was also the theory on which the case was tried and submitted to the jury. Indeed, the October 21 testimony was introduced by the Government only in rebuttal to dispel any inference that petitioner's grand jury testimony was true. But while there was no variance between the indictment and proof at trial, there was a discrepancy between the basis on which the jury rendered its verdict and that on which the Court of Appeals sustained petitioner's conviction. Whereas the jury was instructed to rest its decision on Dunn's September statement, the Tenth Circuit predicated its affirmance on petitioner's October testimony. The Government concedes that this ruling was erroneous. We agree.

To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process. Few constitutional principles are more firmly established than a defendant's right to be heard on the specific charges of which he is accused. There is, to be sure, no glaring distinction between the Government's theory at trial and the Tenth Circuit's analysis on appeal. The jury might well have reached the same verdict had the prosecution built its case on petitioner's October 21 testimony adopting his September 30 statement

rather than on the September statement itself. But the offense was not so defined, and appellate courts are not free to revise the basis on which a defendant is convicted simply because the same result would likely obtain on retrial. As we recognized in *Cole v. Arkansas,* 333 U.S. [196] at 201, [68 S.Ct. 514, 92 L.Ed. 644 (1948)], "[i]t is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made." Thus, unless the September 30 interview constituted an ancillary proceeding, petitioner's conviction cannot stand.[24]

In holding that there was a denial of due process, the Supreme Court looked, not just to the penal statute, but to the indictment and the charge. That is the *Malik* approach. The one the Court advances today is not.

I agree with the Court that the problem in this case is variance, not insufficiency, and that the conviction should be affirmed. But I cannot agree with the Court's reasoning. I join only its judgment.

KEASLER, J., filed this dissenting opinion.

Because the court of appeals did not have the benefit of our opinion in *Gollihar v. State* when it decided this case, we should remand for them to reconsider in light of *Gollihar.* In lieu of that, on the merits, I agree that the evidence was sufficient to convict Fuller, and I would remand for the appellate court to consider Fuller's remaining points of error.

24. *Dunn v. United States,* 442 U.S. 100, 105–07, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979)

(citations and footnote omitted).

## I. Remand

The State's indictment charged that Michael Fuller "intentionally and knowingly cause[d] bodily injury to Olen M. Fuller." At trial, the evidence showed that Michael Fuller injured his father, who was referred to as "Mr. Fuller" or "Buddy." Fuller argued on appeal that the evidence was insufficient to convict. The court of appeals agreed and rendered a judgment of acquittal.[1] We granted the State's petition for discretionary review to decide whether the court of appeals erred in acquitting Fuller "without conducting any inquiry into whether this 'variance' misled [Fuller] to his prejudice."

In *Gollihar v. State*, our majority opinion said that a variance occurs "when there is a discrepancy between the allegations in the charging instrument and the proof at trial"[2] and that, "regardless of whether viewing variance as a sufficiency of the evidence problem or as a notice-related problem ... a variance that is not prejudicial to a defendant's 'substantial rights' is immaterial."[3] The court of appeals did not consider whether the variance in this case prejudiced Fuller's substantial rights. We should not reach the merits of this issue, but should remand this case for the appellate court to consider the issue in light of *Gollihar*.

## II. The Merits

On the merits, I agree with the majority's conclusion but for different reasons.

### A. Notice

The State argues that Fuller could not possibly have been surprised in this case because (1) Fuller was accused of injuring his own father, whose name he certainly knew; (2) the victim's complete name was on the State's witness list; (3) defense counsel stated during voir dire examination that she expected "Olin Fuller"[4] to testify; and (4) defense counsel and the victim met about the case before trial. I agree. Under *Gollihar*, I would hold that the variance did not prejudice Fuller's substantial rights.

### B. Sufficiency

As I stated in *Gollihar*, I believe that "[i]f an appellant argues the evidence was insufficient, the court should consider whether that is so without regard to any surprise or lack of notice."[5] In *Malik v. State*, we held that sufficiency of the evidence is to be measured by the hypothetically correct jury charge. A hypothetically correct jury charge is one which "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."[6]

In *Curry v. State*, we explained that the "law" as "authorized by the indictment" is the statutory elements of the offense as modified by the charging instrument.[7] So

1. *Fuller v. State*, No. 10–98–00019–CR (Tex. App.—Waco, delivered May 27, 1998) (not designated for publication).

2. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim.App.2001).

3. *Id.* at 247–48.

4. While the indictment alleges injury of "Olen" Fuller, the court reporter's record spells the name "Olin."

5. *Gollihar*, 46 S.W.3d at 262 (Keasler, J., concurring and dissenting).

6. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim.App.1997).

7. *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim.App.2000).

Fuller's hypothetically correct jury charge could not simply quote the language of the statute, instructing the jury to find Fuller guilty if it found that he injured an "elderly individual," because the indictment specifically charges that Fuller injured "Olen M. Fuller," and the State was required to prove that element of the offense.[8] While the State was not required to allege the victim's full first name,[9] once it did so, it undertook to prove it.

Here, the jury could have rationally found that the person testifying at trial was "Olen M. Fuller." During voir dire, defense counsel said the following: "I suspect a fellow by the name of Olin Fuller, or nicknamed Buddy, will come and testify." At trial, the prosecutor began his opening statement by introducing the victim as "Olin Buddy Fuller," and defense counsel referred to the victim in closing argument as "Olin Fuller." Of course, voir dire examination and opening and closing statements are not evidence. But the issue, under a sufficiency analysis, should be whether a rational jury could conclude beyond a reasonable doubt that Fuller assaulted the person he was accused of assaulting. Here, it could. A rational jury could conclude beyond a reasonable doubt that the person sitting in the witness chair was the same person Michael Fuller was accused of injuring—his own father. I would decline to follow any hypertechnical approach of the past which that would hold this evidence insufficient to convict.