In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-05-00238-CR


______________________________




JESSIE LEE SHAW, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 6th Judicial District Court


Lamar County, Texas


Trial Court No. 20876




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Jessie Lee Shaw was convicted by a Lamar County jury of using a motor vehicle in evading
arrest or detention. The jury found Shaw used or exhibited the automobile as a deadly weapon. 
Shaw elected to have the trial court assess punishment. Shaw pled true to having been previously
convicted for two prior felony offenses enhancing the punishment range. (1) The trial court sentenced
Shaw to forty years' incarceration. We affirm the trial court's judgment, as we find that the evidence
was legally and factually sufficient. (2)

The Chase

 On June 12, 2005, around 6:00 p.m., Officer Vance Boller (3) had just finished his shift for the
Paris Police Department and picked up his two daughters from their day care facility. On the west
side of town, at a local wrecker service, which Boller knew to be closed at that time of day, Boller
saw a white car backed up to the business' fence, and a male loading the car with items from inside
the fence. The male was later identified as Shaw. Finding this activity suspicious, Boller called
dispatch to suggest an on-duty officer investigate. After being told there were no available officers,
Boller parked his truck about seventy-five yards away and continued to watch Shaw load his vehicle. 
After a while, Boller approached Shaw. When Shaw saw Boller, who was still in his police officer's
uniform, Shaw entered his vehicle, without closing the trunk or the car door, and sped away. Boller
returned to his personal vehicle and pursued. Boller called dispatch and was told no officers were
immediately available to pursue Shaw. At some point, Trooper Greg Wilson of the Texas
Department of Public Safety joined the pursuit, and Boller allowed Wilson to take the lead. Soon
thereafter, Paris police officer J. D. Simmons placed "stop sticks" on a road in Shaw's path; after
Shaw's vehicle crossed the stop sticks (puncturing two of Shaw's tires), Simmons joined the chase. 

 Shaw proceeded to lead the officers on a high-speed chase, reaching approximately sixty
miles per hour in a residential zone where the speed limit was forty-five. During this chase, Shaw
passed other vehicles in a nonpassing zone; Boller specifically testified that Shaw led the officers
through a residential and "[h]igh pedestrian area" where there was "pretty good traffic." At some
points, as Shaw passed other vehicles on the road, there were "a couple" of other vehicles between
Shaw and Boller. Boller said there were "a lot of vehicles" on the road as Shaw traveled from
Campbell to Graham Streets. Shaw's chase also included: running at least two stop signs; driving
through a dip in the road at such speed that his car became airborne momentarily; and traveling as
much as a mile after the "stop sticks" punctured at least two of his tires. After crossing the "stop
sticks," Shaw ran a stop sign and crossed Loop 286, where intersecting traffic was not required to
stop. Boller testified that that particular intersection was "a heavily travel[e]d area" where "major
accidents" had occurred. Shaw finally came to a stop in the entrance to the local Kimberly Clark
factory. 

Analysis

 Shaw's sole points on appeal contend the evidence was legally and factually insufficient to
sustain the jury's finding that he used or exhibited the car which he drove as a deadly weapon. In a
somewhat similar situation, we recently reversed a finding of a car being used as a deadly weapon
in an evading arrest conviction. (4) There, we found the evidence legally and factually insufficient to
support the deadly weapon finding where there was "no evidence" Drichas' reckless driving actually
endangered another person, and thus, the evidence was legally and factually insufficient to support
the deadly weapon finding. Drichas, 152 S.W.3d at 638-39. The Texas Court of Criminal Appeals
reversed our holding. As regards our analysis of the legal sufficiency of the evidence, the Texas
Court of Criminal Appeals said that Drichas' "manner of using his truck posed a danger to pursuing
officers and other motorists that was more than simply hypothetical; the danger was real, and the
manner in which [Drichas] drove his truck made it capable of causing death or serious bodily
injury . . . . " Drichas v. State, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). As for our finding that
the evidence was factually insufficient to support a deadly weapon finding, (5) the Texas Court of
Criminal Appeals stated, "[t]he volume of traffic on the road is relevant only if no traffic exists," and
capability to cause death or serious bodily injury "is evaluated based on the circumstances that
existed at the time of the offense." Id. at 799 (citing Williams v. State, 946 S.W.2d 432, 435-36
(Tex. App.--Fort Worth 1997), rev'd in part on other grounds, 970 S.W.2d 566 (Tex. Crim. App.
1998)). On remand, we applied the Texas Court of Criminal Appeals' language in Drichas as
follows: "although the danger to some other motorist must be actual (not just hypothetical), some
unspecified degree of proximity is necessary to show that actual danger existed, even though no
person was actually endangered." Drichas v. State, 187 S.W.3d 161, 163 (Tex. App.--Texarkana
2006, pet. filed). We examined the record to determine whether there was sufficient evidence that
"there was another motorist present on the roadway 'at the same place and time' as Drichas when he
drove in a reckless manner." Id. at 166. Under such analysis, we again concluded the evidence was
factually insufficient. Id. 

Shaw's Case

 The instant case is markedly different from that presented in Drichas. Officer Boller testified
that, in his opinion, Shaw operated his car, during the chase, in a way that made the car a deadly
weapon. Boller witnessed Shaw pass other vehicles in no-passing zones and drive through a
residential area at a high rate of speed. Shaw led officers through a "[h]igh pedestrian area" where
other cars were present. Boller described the roads during the chase as having "pretty good traffic,"
and sometimes there were a "couple of cars" between Shaw and Boller as Boller pursued. A video
from Officer Simmons' car shows Simmons placing the "stop sticks"; Shaw's car crossing over the
"stop sticks" and passing Simmons; and then Simmons participating in the last minutes of the chase. 
As Simmons joins the pursuit, at least one vehicle can be seen to have pulled over for Simmons, and
as many as five to eight vehicles (other than law enforcement vehicles) are seen at the intersection
where Shaw's vehicle came to a stop. Boller specifically said that, during the chase, there were other
vehicles on the road. 

 Based on the circumstances present and evidence admitted, we find this case distinguishable
from Drichas. Shaw's use of his vehicle "was more than simply hypothetical; the danger was real."
Drichas, 175 S.W.3d at 798. There was ample evidence of other vehicles on the roads as Shaw led
officers on this pursuit. The evidence was legally and factually sufficient to sustain the jury's
conviction. 

 We affirm the judgment.


 Jack Carter

 Justice


Date Submitted: August 30, 2006

Date Decided: October 20, 2006


Do Not Publish


1. Evading detention with a motor vehicle is a state-jail felony. See Tex. Penal Code Ann.
§ 38.04(b)(1). With an affirmative finding of the use of a deadly weapon, it becomes a third-degree
felony. See Tex. Penal Code Ann. § 12.35(c)(1). Enhancing the third-degree felony with two prior
felony convictions increases the punishment range to imprisonment for life or any term of years not
more than ninety-nine years or less than twenty-five years. Tex. Penal Code Ann. § 12.42(d).
2. We review the legal sufficiency of the evidence by determining whether a rational trier of
fact could have found the essential elements of the crime beyond a reasonable doubt after viewing
the evidence in a light most favorable to the prosecution. Cates v. State, 102 S.W.3d 735, 738 (Tex.
Crim. App. 2003) (citing Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)).


 The Texas Court of Criminal Appeals has very recently modified the factual sufficiency
review. In a factual sufficiency review, we view all the evidence in a neutral light and determine
whether the evidence supporting the verdict is so weak that the jury's verdict is clearly wrong and
manifestly unjust or whether the great weight and preponderance of the evidence is contrary to the
verdict.  Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); see Clewis v. State, 922 S.W.2d
126, 134 (Tex. Crim. App. 1996); Watson v. State, No. PD-0469-03 (Tex. Crim. App. Oct. 18,
2006), available at http://www.cca.courts.state.tx.us/OPINIONS/
HTMLOPINIONINFO.ASP?OPINIONID=14579.
3. The State advises that the officer's name is correctly spelled "Boehler." However, we use
the spelling of the court reporter in the reporter's record. 
4. See Drichas v. State, 152 S.W.3d 630 (Tex. App.--Texarkana 2004), rev'd, 175 S.W.3d 795
(Tex. Crim. App. 2005). 
5. In our original opinion, we noted that the record before us was devoid of any evidence or
any of the pursuing "officers or any other person were actually endangered" by Drichas' driving. 
Drichas, 152 S.W.3d at 638. 


in 2002, no pet.). We agree
that the interpretations of Article 38.14 relating to accomplice witness testimony are
persuasive and applicable to Article 38.141.
          Legal and factual sufficiency standards of review are not applicable to a review of
covert witness testimony under Article 38.141, because corroboration of the covert witness
testimony is a statutory requirement imposed by the Texas Legislature. Torres, 137
S.W.3d at 196; Cantelon, 85 S.W.3d at 460; see Cathey v. State, 992 S.W.2d 460, 462
(Tex. Crim. App. 1999) (accomplice witness testimony). The covert witness rule only
requires that there is some other evidence which tends to connect the accused to the
commission of the offense alleged in the indictment. Torres, 137 S.W.3d at 196; see
Hernandez v. State, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997). 
          In determining whether there is "other evidence" which tends to connect the
accused with the offense, we must eliminate all covert witness testimony and determine
whether the remaining inculpatory facts and circumstances tend to connect the appellant
to the offense. Torres, 137 S.W.3d at 196; Young, 95 S.W.3d at 451; Cantelon, 85 S.W.3d
at 461. In our analysis of whether there is sufficient corroboration, we will eliminate from
consideration all of Taylor's testimony. Article 38.141 will be satisfied if there was some
other evidence that tended to connect Brown with the cocaine transactions.
          Brown's presence at the scene of the crime was clearly established in both
transactions. Taylor's cars were searched before both transactions, a surveillance was
conducted following Taylor's movements on both days, and both videotapes recorded the
presence of Brown at Brown's residence. However, Brown's presence alone is not enough
to corroborate the accomplice testimony. Mere presence of a defendant at the scene of
the crime is insufficient to corroborate accomplice testimony. Torres, 137 S.W.3d at 196. 
However, proof that the accused was at or near the scene of the crime at or about the time
of its commission, coupled with other suspicious circumstances, may be sufficient to tend
to connect the accused to the crime. Id.; see Brown v. State, 672 S.W.2d 487, 489 (Tex.
Crim. App. 1984). Even apparently insignificant incriminating suspicious circumstances
may sometimes prove to be sufficient corroboration. Torres, 137 S.W.3d at 196; Cantelon,
85 S.W.3d at 461; see Munoz v. State, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993).
Cumulative evidence of "suspicious circumstances" can be sufficient evidence which
"tends to connect" a defendant to the alleged offense, even if none of the circumstances
would be sufficient individually. Cantelon, 85 S.W.3d at 460–61. We will examine the
other evidence that tends to connect Brown to each offense in turn.
          The State introduced sufficient "suspicious circumstances" tending to connect
Brown to the March 5 transaction. Three $20.00 bills found in Brown's possession had
matching serial numbers with the money photocopied by the police. Arledge testified he
had photocopied the money before he provided it to Taylor. The videotape of the March 5
transaction recorded the following conversation:
[Brown]: What you need?
[Taylor]: The same thing.
[Brown]: What did you get from me the other day?
[Taylor]: 1, 5, 0.

The money and the above conversation, when combined with Brown's presence at the
scene, are sufficient to tend to connect Brown to the offense. 
          Brown argues that the evidence of suspicious circumstances is insufficient to tend
to connect him to the February 26 transaction. While Brown's presence was established
at the scene of the offense, none of the money, which had previously been photocopied, 
provided to Taylor to purchase cocaine, was found in Brown's possession. As discussed
above, the videotape of the March 5 transaction recorded Brown asking Taylor what he
wanted and asking what he had gotten "the other day." While a date is not specified
identifying the "other day," the fact Brown had provided "the same thing" to Taylor
previously is a suspicious circumstance. In addition, the videotape of the February 26
transaction records Brown entering the house, after a brief conversation with Taylor, and
then exiting with something in his (Brown's) hand. The combined effect of Brown's
presence at the scene and the suspicious circumstances, including the conversation during
the March 5 transaction and the fact Brown entered his residence and returned with
something in his hand, is sufficient to corroborate the covert witness' testimony.
          In Young, the First District Court of Appeals held that the corroboration of a covert
witness' testimony was insufficient because the only evidence linking the defendant to the
offense was the covert witness' identification of the defendant's voice on an audiotape. 
Young, 95 S.W.3d at 452. The court noted that, without the informant's testimony, the
accused was not linked to the audiotape, which was the only noninformant testimony
linking Young to the crime. Id. This case is distinguishable from Young because the police
officers, who conducted a surveillance of Taylor's travels, observed Taylor's vehicle at
Brown's residence and because the recording of the transaction included a videotape
recording rather than just an audiotape recording. 
          We conclude that sufficient corroboration of the covert witness testimony exists. 
The State introduced sufficient evidence to corroborate both the February 26 and March 5
transactions. We overrule Brown's first point of error.
The Variance Was Immaterial
          Brown contends, in his second point of error, that the evidence is legally insufficient
because of a variance between the indictment and the proof at trial. The indictment
specified Brown sold the cocaine to "T. Taylor," while the proof at trial established that the
undercover officer was "Timothy Taylor." As Brown correctly acknowledges, the State is
permitted under Article 21.07 of the Code of Criminal Procedure to indict using one or more
of the initials of a person's given name. Tex. Code Crim. Proc. Ann. art. 21.07 (Vernon
Supp. 2004–2005). Brown argues, though, that the State is obliged to connect the initial
and the actual name at trial. Because the State did not prove Timothy Taylor was the
same person as "T. Taylor" in the indictment, a variance existed between the indictment
and the evidence at trial.
          "A 'variance' occurs when there is a discrepancy between the allegations in the
charging instrument and the proof at trial." Gollihar v. State, 46 S.W.3d 243, 246 (Tex.
Crim. App. 2001). Only a material variance requires reversal. See Fuller v. State, 73
S.W.3d 250, 253 (Tex. Crim. App. 2002). "The widely-accepted rule, regardless of whether
viewing variance as a sufficiency of the evidence problem or as a notice-related problem,
is that a variance that is not prejudicial to a defendant's 'substantial rights' is immaterial."
Gollihar, 46 S.W.3d at 247–48; see Stevens v. State, 891 S.W.2d 649, 650 (Tex. Crim.
App. 1995); see also Rojas v. State, 986 S.W.2d 241, 246 (Tex. Crim. App. 1998). The
defendant has the burden of demonstrating surprise or prejudice. Santana v. State, 59
S.W.3d 187, 194 (Tex. Crim. App. 2001). In order to determine whether a defendant's
"substantial rights" have been prejudiced, we must consider two questions: whether the
indictment, as written, informed the defendant of the charge against him or her sufficiently
to allow such defendant to prepare an adequate defense at trial, and whether prosecution
under the deficiently drafted indictment would subject the defendant to the risk of being
prosecuted later for the same crime. Gollihar, 46 S.W.3d at 248 (citing United States v.
Sprick, 233 F.3d 845, 853 (5th Cir. 2000)).
          In Fuller, the Texas Court of Criminal Appeals held that a variance between an
indictment that alleged that the victim was "Olen M. Fuller" and the evidence at trial which
referred to the victim as "Mr. Fuller" or as "Buddy" was an immaterial variance. Fuller, 73
S.W.3d at 254. Similar to Fuller, the variance in this case does not involve a statutory
element of the offense and there is no showing that Brown was surprised or prejudiced by
the variance. The indictment, as written, sufficiently informed Brown of the charge against
him and the variance would not subject Brown to another prosecution for the same offense. 
The variance is immaterial.
Legally Sufficient Evidence Exists
          In our review of the legal sufficiency of the evidence, we employ the standards set
forth in Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the court to view the
relevant evidence in the light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Turner v.
State, 805 S.W.2d 423, 427 (Tex. Crim. App. 1991). 
          Evidence sufficiency should be measured against a "hypothetically correct" jury
charge. See Gollihar, 46 S.W.3d at 253; Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim.
App. 1997). A "hypothetically correct" jury charge is "one that accurately sets out the law,
is authorized by the indictment, does not unnecessarily increase the State's burden of
proof or unnecessarily restrict the State's theories of liability, and adequately describes the
particular offense for which the defendant was tried." Malik, 953 S.W.2d at 240. The "'law'
as 'authorized by the indictment' must be the statutory elements" of the offense charged
"as modified by the charging instrument." Curry v. State, 30 S.W.3d 394, 404 (Tex. Crim.
App. 2000). The "hypothetically correct" jury charge cannot "wholly re-write the
indictment," but is not required to "track exactly all of the allegations in the indictment."
Gollihar, 46 S.W.3d at 253. 
          The hypothetically correct jury charge in this case would have required the jury to
find that Brown knowingly delivered the controlled substance to Timothy Taylor rather than
T. Taylor. Taylor testified Brown sold him the substances provided to the police. As
discussed above, Taylor's testimony was sufficiently corroborated. Ruben Rendon, a
criminalist with the Texas Department of Public Safety, testified the substance provided to
the police by Taylor on both occasions was cocaine. The cocaine, including some
adulterants and dilutants, purchased by Taylor February 26 weighed 1.05 grams, and the
cocaine purchased March 5 weighed 1.48 grams. Viewed in a light most favorable to the
prosecution, a rational juror could have found Brown guilty of both offenses beyond a
reasonable doubt. Because the variance is immaterial and the evidence is legally
sufficient, we overrule Brown's second point of error.
The Trial Court Did Not Err in Denying the Mistrial
          In his last point of error, Brown contends the trial court erred in denying his motion
for a mistrial because of the difference between the videotape provided to the defense
before trial and the videotape admitted into evidence. On the copy of the videotape
provided to the defense, the audio was not intelligible. However, on the videotape
introduced at trial, the audio could be understood. The State claimed the audio on all
copies made at the same time the defense's copy was made was not as intelligible as the
original videotape. The State alleged it did not discover the audio could be understood
better on the original until shortly before trial and asserted the originals had been available
for the defense to examine. The State argues Brown failed to preserve error.
          To preserve error, an objection must be "timely, specific, pursued to an adverse
ruling, and, with two exceptions, contemporaneous--that is, made each time inadmissible
evidence is offered . . . ." Geuder v. State, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003)
(discussing one exception, where evidence is heard outside jury's presence to determine
admissibility); see Broderick v. State, 35 S.W.3d 67, 76 (Tex. App.—Texarkana 2000, pet.
ref'd). The objection must be made at the earliest possible opportunity. Marini v. State,
593 S.W.2d 709, 714 (Tex. Crim. App. [Panel Op.] 1980); In re G.A.T., 16 S.W.3d 818, 828
(Tex. App.—Houston [14th Dist.] 2000, pet. denied); see Stults v. State, 23 S.W.3d 198,
205–06 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).
          When the videotape was offered into evidence, Brown's counsel stated he had no
objection. The State contends this statement waived any error. However, an objection is
not required until the basis of relief becomes apparent. Johnson v. State, 878 S.W.2d 164,
167 (Tex. Crim. App. 1994); see Crane v. State, 786 S.W.2d 338, 348 (Tex. Crim. App.
1990); Thornton v. State, 994 S.W.2d 845, 852 (Tex. App.—Fort Worth 1999, pet. ref'd);
Morgan v. State, 816 S.W.2d 98, 102 (Tex. App.—Waco), pet. ref'd, 817 S.W.2d 706 (Tex.
Crim. App. 1991). The defense may not have been aware of the difference in the
videotape when the State introduced that videotape into evidence.


 
          While the difference between the videotape provided to the defense and the
videotape admitted into evidence may not have been apparent at the time of admission,
the difference would have been apparent as soon as the videotape was played. After the
basis for relief became apparent, the defense failed to make a timely objection. Taylor
provided a play-by-play commentary while the videotape was played before the jury. 
Taylor was then cross-examined, Rendon provided lengthy testimony concerning the tests
he performed identifying the substance as cocaine, the State rested, and the jury was
dismissed for lunch before the defense made any objection to the videotape. Because
Brown did not make a timely objection as soon as the basis for relief became apparent, he
did not preserve error for appellate review. We overrule his last point of error.
Conclusion
          The testimony of the covert witness was sufficiently corroborated by other evidence
that tended to connect Brown to the offense. The variance between the indictment and the
evidence at trial was immaterial, and legally sufficient evidence exists to support the jury's
verdict. Error was not preserved concerning the difference between the videotape
provided to the defense before trial and the videotape admitted into evidence. 
          We affirm the judgment.




                                                                Donald R. Ross
                                                                Justice

Date Submitted:      August 16, 2004
Date Decided:         December 14, 2004

Publish