NO. 07-01-0394-R



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



JANUARY 2, 2003



______________________________




FRANK LEROY GAINES, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 95-420458; HONORABLE BLAIR CHERRY, JUDGE



_______________________________



Before QUINN and REAVIS and JOHNSON, JJ.

 Appellant Frank Leroy Gaines appeals from a judgment revoking his community
supervision, adjudicating him guilty of aggravated sexual assault and assessing
punishment of incarceration for 35 years. We affirm.

 Pursuant to a plea bargain, on April 14, 1998, appellant entered a plea of guilty to
a charge of aggravated sexual assault. The trial court found that the evidence
substantiated appellant's guilt, accepted the guilty plea, deferred adjudication of guilt and
sentenced appellant to ten years community supervision. 

 On June 26 and 27, 2001, the trial court heard the State's Amended Motion to
Proceed with Adjudication of Guilt and motion to revoke appellant's probation. The trial
court found that appellant violated his probation terms, revoked appellant's community
supervision and adjudicated him guilty of aggravated sexual assault. The trial court
ordered a pre-sentence report and set a separate hearing for sentencing. On September
13, 2001, the trial court held a sentencing hearing, following which appellant was
sentenced to incarceration for 35 years in the Institutional Division of the Texas
Department of Criminal Justice. Appellant filed a general notice of appeal. 

 Counsel for appellant has filed a Motion to Withdraw and a Brief in Support thereof. 
In support of the motion to withdraw, counsel has certified that, in compliance with Anders
v. California, 386 U.S. 738, 744-45, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), the record has
been diligently reviewed and that in the opinion of counsel, the record reflects no
reversible error or grounds upon which a non-frivolous appeal can arguably be predicated. 
Counsel thus concludes that the appeal is frivolous. Counsel has discussed why, under
the controlling authorities, there is no reversible error in the trial court proceedings or 
judgment. See High v. State, 573 S.W.2d 807, 813 (Tex.Crim.App. 1978). 

 Counsel has attached exhibits showing that a copy of the Anders brief and Motion
to Withdraw have been forwarded to appellant, and that counsel has appropriately advised
appellant of appellant's right to review the record and file a response to counsel's motion
and brief. Appellant has not filed a response to counsel's motion and brief.

 We have made an independent examination of the record to determine whether
there are any arguable grounds for appeal. See Penson v. Ohio, 488 U.S. 75, 109 S.Ct.
346, 102 L.Ed 2d 300 (1988); Stafford v. State, 813 S.W.2d 503, 511 (Tex.Crim.App.
1991). We have found no such grounds. We agree that the appeal is frivolous. 

 Accordingly, counsel's Motion to Withdraw is granted. The judgment of the trial
court is affirmed.


 Phil Johnson

 Justice



Do not publish. 



rting the task earlier than the 2:30 time appellant's
telephone message mentioned, he initially expected to be able to complete installation of
the computer in time to work his entire shift at the jail, but said that he never discussed that
expectation with appellant.

 The State's next witness was Sergeant Kevin Bradshaw. He testified that appellant
called him on January 9th and instructed him to arrive early the next day to perform roll call
because Meyers would be on special assignment. According to Bradshaw, special
assignment meant that an officer would be working, just not at his usual position. 
Bradshaw recorded Meyers on the roll call, asserting he did not know how long Meyers
would be on special assignment. He did not see appellant or Meyers at the jail on January
10th. 

 The State presented the testimony of Captain Robert Montgomery, appellant's
supervisor. He described the duties of a lieutenant in the jail division. He said appellant
was Meyers' immediate supervisor and had authority to assign Meyers to special
assignments which would not be optional, but would be part of Meyers' job that he would
be required to perform. Appellant had never requested, and Montgomery had not
authorized, appellant to work at home or to have Meyers install a computer at appellant's
home. According to Montgomery, appellant had no need for Internet access to perform his
duties and his administrative duties focused on reviewing correspondence generated by
the sergeants he supervised rather than creating the documents.

 The State called Lieutenant Michael West of the Houston Police Department who
held the same position as appellant at the southeast jail but worked the night shift. He
testified all the lieutenants at the jail used the same office during their respective shifts. 
That office contained a desktop computer and a terminal connected to the Department's
mainframe computer. The desktop computer was used for word processing but did not
have access to the Internet in January 1999, or at the time of trial in January 2002. West
stated he was trying to get Internet access through that computer for purposes of
submitting requests for "extra-job" permits and in-service training. He also testified those
two Department resources became available online only in January 2002. The only time
West used his home computer for Department work was occasional revision of documents
drafted at the Department.

 The State's final witness was Sergeant Sharon Evans, who was assigned to the
internal affairs division in January 1999. On January 10, 1999, Evans and two other
officers were watching appellant's house as part of another investigation into whether he
was reporting to work as scheduled. When the three arrived at the house about 2:30 p.m.
on January 10, 1999, they saw appellant's city vehicle and a truck registered to Meyers. 
They watched Meyers leave the house shortly before 6 p.m. and they remained at the
house until the end of appellant's shift at 11 p.m. Portions of a video recording made by
Evans were introduced into evidence.

 At the conclusion of the State's case, appellant moved for a verdict of acquittal which
was denied. Appellant's first witness was Sergeant Michael Murray with the Department
who generally testified the administrative facilities, specifically the computers, at the
southeast jail were inadequate and inferior to those in other divisions of the Department. 
When asked if he would have completed some reports at home if he had compatible
computer equipment, Murray said he would not because the Department's policies required
completion of reports during a shift, even if that required staying after the shift. He did
recall compiling a wish list for the jail in early 1998, and that appellant requested inclusion
of a computer with Internet access on the list. 

 Murray recounted a conversation with appellant concerning Meyers' appreciation for
financial advice appellant gave to Meyers and Meyers' offer to help appellant with his home
computer. On cross-examination, Murray said he was a "close personal friend" of
appellant. The State elicited testimony from Murray that appellant actively invested in
residential real estate and may have been motivated to get Internet access to further his
investment activities. 

 Sergeant Charles Pugh, who also worked in the southeast jail under appellant also
testified to the inadequacy of the computer equipment in that jail. Pugh said he did some
of his administrative work on a computer at his home, he did so largely for his own
convenience, and he had never been told he could not work at home. When asked if he
would consider a special assignment from his supervisor as an order, Pugh responded "I
think it's in all our best interest to accommodate our supervisors whether or not it's legal." 

 Appellant testified in his own defense. He described the mainframe terminal and
desktop computers in the lieutenants' office in the southeast jail, and stated he never used
the desktop computer in that office, opting to prepare documents on a newer computer in
the sergeants' office. This would occasionally present a problem when appellant was
drafting performance reviews on the sergeants whose office he was using. Appellant
offered examples of tasks he could perform more efficiently using a computer, including
recording notes from meetings he conducted, and using a calendar program to record the
training schedules and records of jail employees. Appellant said a new computer would
also be valuable in keeping track of property assigned to the jail. He testified that the
desktop computer in the sergeants' office would not be adequate to handle these tasks. 
He also discussed his desire to get Internet access to research civilianization (2) of the jail. 

 When it became apparent to him in late 1998 that the Department was not going to
provide a new computer for the lieutenants' office, appellant decided to buy his own. In
addition to the Department-related uses described above, appellant said he also planned
personal use of the computer. He had discussed his belief in the need for new computers
in the jail with Meyers on more than one occasion. Appellant testified that Meyers had
offered to set up a personal computer for him in the fall of 1998. He believed the offer was
made as a personal favor because appellant had given Meyers advice on personal
problems and financial matters, such as telling Meyers how he could invest in real estate. 

 Appellant testified that his request to Meyers on January 9, 1999 was not an order
but simply an acceptance of the earlier offer. He expected Meyers to do the work on his
own time and to finish the work before his shift started. Appellant explained that he
instructed Sergeant Bradshaw to perform the roll call to give Meyers an extra 30 minutes
before starting his shift. He denied asking Meyers to arrive at his home at 2:30 p.m.

 Appellant's description of the work required to get the computer and Internet
connection set up mirrored that given by Meyers. He agreed that Meyers left about 6 p.m. 
 When asked if there was a "justification for [Meyers] doing at least part of the work on
Houston Police Department time," appellant said there was because of his intent to utilize
the Internet "to do part of my police job," and that it was "ultimately going to benefit the
department." Appellant testified that he expected Meyers to report to the jail for the
remainder of his shift after leaving appellant's house. Appellant admitted saying to Meyers
that he would not see Meyers again that evening, but meant he would not see Meyers at
the jail because he, appellant, was not going to the jail that night, even though he was
assigned to work. 

 On cross-examination, the State elicited testimony from appellant that he invested
in residential real estate and a computer at his home, particularly one with Internet access,
would be useful in conducting those activities. Countering appellant's testimony that he did
not think there was anything wrong with having Meyers help him during Meyers' shift, the
State presented testimony that in 1984 appellant had been disciplined for having another
Department employee take him to pick up a personal car during the employee's shift. The
court did not rule on appellant's objection to the evidence, but said he would not consider
"extraneouses" (sic). Appellant also admitted he never submitted any work to the
Department that had been done on his home computer, but noted he was employed by the
Department for only about eight days after it was installed. 

 On this evidence, the trial court found appellant guilty, imposing the fine and court
costs noted above. Appellant timely perfected appeal. 

 Appellant's first two issues challenge the legal and factual sufficiency of the evidence
supporting his conviction. He specifically argues the evidence is insufficient to support
findings that he intended to obtain a benefit and defraud the Houston Police Department,
or that he ordered Meyers to set up his home computer. 

 The standards by which we determine the legal and factual sufficiency of the
evidence are well established. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61
L.Ed.2d 560 (1979); and Clewis v. State, 922 S.W.2d 126 (Tex.Crim.App. 1996). It is
sufficient to note that when presented with both challenges, we must first determine if the
evidence is legally sufficient, and if it is legally insufficient, render a judgment of acquittal. 
If the evidence is legally sufficient, we must then determine if it is factually sufficient
measured by the standards set out in Clewis. 922 S.W.2d at 134. 

 In considering a legal insufficiency challenge, we are required to view the evidence
in the light most favorable to the prosecution and then determine if any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt.
Jackson, 443 U.S. at 319. Sufficiency is measured against a hypothetically correct jury
charge. Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). A hypothetically
correct jury charge for the case would be one that accurately sets out the law, is authorized
by the indictment, does not unnecessarily increase the State's burden of proof or restrict
its theories of liability, and adequately describes the particular offense for which the
defendant was tried. Id. at 239-40. This standard also applies in non-jury cases. Gollihar
v. State, 46 S.W.3d 243 (Tex.Crim.App. 2001).

 The offense of Abuse of Official Capacity is set out in section 39.02 of the Penal
Code. (Vernon 2003). As relevant here, it provides: 

 A public servant commits an offense if, with intent to obtain a benefit or with
intent to harm or defraud another, he intentionally or knowingly . . . misuses
government property, services, or personnel, or any other thing that has
come into the public servant's custody or possession by virtue of the public
servant's office or employment.

The indictment alleged that appellant: 

 [W]hile a public servant . . . and with intent to obtain a benefit and defraud
another, intentionally and knowingly misuse[d] government personnel, . . .
that had come into his custody by virtue of his office and employment, in that
defendant was Sergeant J.C. Meyers' supervisor, by ordering [Meyers] to
report to the defendant's home on a paid work day rather than to report to his
work location [to] install the defendant's personal home computer system[.]


Appellant does not contest that he was a public servant under the statute. His first issue
challenges the legal sufficiency of the evidence that he (1) intended to obtain a benefit and
defraud the Police Department, and (2) "ordered" Sergeant Meyers to set up the computer.

 We initially note that the State did not have the burden to prove that appellant held
both the intent to obtain a benefit and the intent to defraud the Police Department, even
though the indictment stated the allegations in the conjunctive while the statute presents
those intent elements disjunctively as alternatives. See Tex.Pen.Code § 39.02(a) (Vernon
2003); Eastep v. State, 941 S.W.2d 130, 133 (Tex.Crim.App. 1997).

 Although appellant purports to challenge the evidence that he intended to obtain a
benefit or defraud the Department, his argument is that the evidence is legally insufficient
because both he and the Department benefitted from Meyers' work on January 10, 1999,
and "no evidence rebutted" his claims that he had Meyers set up the computer so he could
use it "primarily" for work related purposes. This argument does not challenge the finding
that he intended to obtain a benefit, but rather seeks to show there was no misuse because
the Department benefitted from the work. The argument must fail. First, it asks us to
disregard the standards governing legal sufficiency review, which mandate that we consider
the evidence in the light most favorable to the judgment. Jackson, 443 U.S. at 319. 
Secondly, under the case law, evidence of a benefit to the Department is not controlling in
a legal sufficiency analysis of the evidence supporting a finding of appellant's intent to
obtain a benefit.

 The evidence supporting a finding that appellant intended to obtain a benefit from
Meyers' work during the time he was being paid by the Department included appellant's
own testimony that he planned to use the computer for personal as well as work-related
uses, and that the computer would be useful in pursuing his real estate investments. 
Evidence of a possible benefit to the Department cannot render the evidence of appellant's
intent to obtain a personal benefit legally insufficient. In State ex rel. Hightower v. Smith,
671 S.W.2d 32 (Tex. 1984), the court was presented with the question whether a sheriff
had misapplied county resources under the predecessor to section 39.02 by directing
deputies to patrol an apartment complex in exchange for his free use of an apartment. The
court held the evidence legally sufficient to support a jury finding that the sheriff committed
an illegal act, supporting his removal from office. 671 S.W.2d at 35. Because the evidence
supported the conclusion the patrols were conducted for his benefit, the court rejected the
sheriff's argument there was no misapplication because the patrols also fulfilled a legitimate
function of the department. Id. We do not read the Court of Criminal Appeals' discussion
of Hightower in Margraves v. State to disapprove of that holding. 34 S.W.3d 912, 916
(Tex.Crim.App. 2000). Under Hightower, the evidence here was legally sufficient to support
a conclusion that appellant had Meyers set up his computer intending to obtain a personal
benefit.

 Appellant also challenges the legal sufficiency of the evidence that he "ordered"
Meyers to set up the computer. We disagree with the argument's premise that the State
was required to prove he gave a direct order to Meyers. Section 39.02(a) does not contain
the requirement that a person "order" government personnel to do something to be guilty
of misusing government personnel. The conduct prohibited by the statute is misuse, not
misuse by ordering. The indictment's allegation that appellant misused Meyers by ordering
him to report to appellant's home on a work day rather than to his normal post, then, is an
allegation of a non-statutory fact of the type discussed in Presiding Judge Keller's
concurring opinion in Fuller v. State, 73 S.W.3d 250, 256-57 (Tex.Crim.App. 2002).
Whether the State has the burden to prove such an allegation (or, said another way,
whether the allegation is included in the hypothetically correct jury charge for the offense)
depends on whether the allegation is necessary for an adequate description of the
particular offense for which the defendant was tried. Id. at 256. Under the rule adopted in 
Gollihar, that necessity turns on considerations of notice and double jeopardy, and is
evaluated through the material variance test. 46 S.W.3d at 257. Applying such an analysis
to this case, we first observe that viewing the evidence in the light most favorable to the
judgment would include accepting as true Meyers' testimony that appellant's message
"instructed" him to report to appellant's home at about 2:30 p.m., when his shift was to
begin. (3) Appellant complains on appeal that the indictment did not adequately give him
notice of the nature of the accusation against him, but his complaint is not that he was
surprised by Meyers' testimony. 

 With respect to double jeopardy, appellant clearly would not be at risk of a
subsequent prosecution for misuse of Meyers on that occasion following his conviction in
this case. Under the Gollihar test, then, the variance between the indictment's allegation
that appellant ordered Meyers to appear at appellant's residence at the start of Meyers'
shift to install appellant's computer and the proof that he instructed Meyers to do so is not
material and does not render the evidence legally insufficient. 

 Appellant also argues that the State had no theory of the manner in which appellant
misused Meyers other than his ordering him, and that failure of proof of the order renders
the evidence of misuse legally insufficient. We must disagree here as well. The argument 
boils down to a contention that appellant cannot have ordered Meyers to take the actions
that resulted in this prosecution without using the word "order." In the context of this
communication to a police sergeant from his immediate supervisor concerning actions he
was to take at the time his shift began, we see no difference in an order and an instruction.

 Viewed in the light most favorable to the judgment, the evidence showed appellant's
instruction to Meyers to arrive at his home at the start of Meyers' shift and that Meyers was
on "special assignment," appellant's instruction to Bradford that Meyers was on "special
assignment," Captain Montgomery's testimony that an officer was required to perform a
"special assignment" assigned by a supervisor, and appellant's statement to Meyers not
to go to the jail that evening. That evidence is legally sufficient to establish appellant
misused government personnel under his control for his own benefit. We overrule
appellant's first issue.

 Appellant's second issue questions the factual sufficiency of the evidence supporting
the same elements challenged in his first issue. A factual sufficiency review requires us to
determine whether, on neutral review, the proof is so obviously weak as to undermine
confidence in the fact finder's determination, or the proof of guilt, although adequate taken
alone, is greatly outweighed by contrary proof. King v. State, 29 S.W.3d 556, 563
(Tex.Crim.App. 2000). In support of this issue, appellant relies on the same evidence cited
in support of his first issue. This evidence was offered to show the Department benefitted
from Meyers' work at appellant's house. It included evidence that no Department regulation
prevented appellant from doing Department work on his personal computer, that the
computers at the southeast jail were inadequate and did not have Internet access, that
appellant had unsuccessfully requested a computer with Internet access for the lieutenants'
office at the jail, and that appellant intended to use his home computer "primarily" for police
work. The holding in Hightower is equally applicable here: appellant's evidence of a
possible public benefit, even a primary benefit, from his use of government resources does
not negate the State's proof of the elements of the offense.

 Appellant's second issue also challenges the factual sufficiency of the evidence that
he ordered Meyers to set up the computer, again referencing the evidence discussed with
respect to his first issue. Because appellant's issuance of a direct order to Meyers is not
an element of the offense, we need not consider the sufficiency of the evidence supporting
that fact. See Gollihar, 46 S.W.3d at 256. Appellant's reply brief makes the argument that
if there was no order, there was no misuse. We will consider appellant's issue, then, as a
challenge to the sufficiency of the evidence that he misused Meyers by virtue of being his
supervisor. In addition to the evidence concerning the benefits to the Department of
appellant having a home computer, the evidence contrary to the court's judgment included
appellant's testimony that he merely accepted Meyers' prior offer to set up a home
computer for him, that Meyers was doing the work as a personal favor, and that appellant
expected the work to be done before Meyers' shift started. Each of these assertions was
controverted. Although Meyers testified that he did not think he was doing anything wrong
by installing appellant's computer on Department time, he also testified he did not view
appellant's request as a personal favor. As noted, Meyers characterized appellant's
message to him as an instruction. Resolution of conflicts in testimony depends on the
relative credibility of the witnesses. The fact finder who is present at trial and observes the
witnesses' demeanor is in the best position to evaluate their credibility and the weight to
be given their testimony. See Cain v. State, 958 S.W.2d 404, 408-09 (Tex.Crim.App.
1997). A factual sufficiency review must be appropriately deferential so as to avoid the
appellate court's substituting its own judgment for that of the fact finder. Clewis, 922 S.W.2d
at 133. Under Clewis, an appellate court's authority to disagree with the fact finder's
determination is appropriately used only when the record clearly indicates such a step is
necessary to arrest the occurrence of a manifest injustice. "Otherwise, due deference must
be accorded the fact finder's determinations, particularly those determinations concerning
the weight and credibility of the evidence." Johnson v. State, 23 S.W.3d 1, 9
(Tex.Crim.App. 2000). Appellant does not present a persuasive argument showing why
we should disregard the trial court's resolution. We overrule appellant's second issue.

 In his third issue, appellant challenges the trial court's failure to quash the indictment
because it failed to charge an offense, was based on an unconstitutional statute, and was
impermissibly vague. 

 Appellant's first argument in support of this issue is that the indictment failed to
explain how he unlawfully misused Sergeant Meyers or how he "came into custody" of
Meyers, which, appellant contends, are elements of the offense. Appellant's argument
merely notes the indictment did not cite any Department regulations explaining how he was
to use his subordinates, but he fails to cite or discuss any relevant authority imposing that
requirement. The indictment specifically alleged the tasks appellant had Meyers perform
and that appellant acted with intent to obtain a benefit. With regard to the allegation that
appellant was in "custody" of Meyers, the indictment explained that appellant "was
Sergeant J.C. Meyers' supervisor." These allegations mirror the elements of the offense
set out in section 39.02(a). 

 Appellant next argues section 39.02 is unconstitutionally vague. After citing authority
reciting the rule that a criminal statute must give a person of ordinary intelligence fair notice
of what conduct is forbidden, see Cain v. State, 855 S.W.2d 714, 718 (Tex.Crim.App.
1993), appellant argues that section 39.02 "does not 'clearly' criminalize having a
government subordinate miss work to set up a personal computer at a house," that a
reasonable person would think the conduct "might be subject to administrative discipline,"
and "a reasonable person would not think that what Lt. Campbell did constituted a crime." 


 We must always begin with the presumption that a statute is constitutional. Ely v.
State, 582 S.W.2d 416, 419 (Tex.Crim.App.1979). The predecessor to section 39.02 was
upheld against a vagueness challenge in Margraves. 34 S.W.3d at 921. Appellant's
argument fails to distinguish Margraves' holding on this issue or overcome the presumption
of constitutionality which attaches to legislative acts. 

 Appellant's third argument asserts the indictment was impermissibly vague because
it failed to define the terms "misuse" or "custody." He argues the term misuse should have
been defined because section 39.01(2) defines that term in four different ways. An
examination of the statute reveals, however, that it defines the term misuse only with
respect to misuse of property. The indictment alleged misuse of government personnel,
and went on to specify the conduct constituting the misuse. The State's inclusion of the
word "custody" in the indictment tracks the statutory language. Inclusion of it did not render
the indictment impermissibly vague because the indictment specified the nature of the
relationship, that appellant was Meyers' supervisor. Appellant's third issue is without merit
and is overruled.

 Appellant's fourth issue complains of recitations in the trial court's judgment that he
pled guilty and that the offense was a class A misdemeanor. The record affirmatively
shows that appellant pled not guilty. It also shows the value of the misuse alleged was over
$20 and less than $500, making the offense a class B misdemeanor. Tex.Penal Code ann.
§ 39.02(c)(2) (Vernon 2003). The State agrees these recitations in the judgment are in
error. We sustain this issue and, as requested by both parties, reform the judgment to
reflect that appellant pled not guilty and the offense is a class B misdemeanor. See
Tex.R.App.Proc. 43.2(b). As reformed, we affirm the judgment of the trial court.


 James T. Campbell

 Justice




Publish. 



1. Texas Penal Code Section 39.02 (Vernon 2003).
2. Civilianization was described as the use of civilian employees in the jail to replace
commissioned peace officers to reduce costs and allow the officers to be assigned to patrol
and other duties requiring commissioned officers.
3. During his testimony at trial, Meyers repeatedly characterized appellant's
communication to him as "instructing" Meyers to appear at appellant's residence to install
the computer. Although Meyers was asked at trial whether appellant used the phrase "I
order you" or the word "order" in his telephone message, Meyers was not asked whether
appellant used the word "instruct."