In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-06-01104-CR

NO. 01-06-01112-CR

____________


MICHAEL SETH MORGAN, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 56th District Court 

Galveston County, Texas

Trial Court Cause Nos. 04CR3126 and 04CR3127 





MEMORANDUM OPINION



 A jury convicted appellant, Michael Seth Morgan, of two intoxication-manslaughter felony offenses, as charged in two indictments, see Tex. Pen. Code
Ann. § 49.08 (Vernon Supp. 2007), and assessed punishment at twelve years'
confinement for each offense. In two issues, appellant contends that the evidence
is factually insufficient to support his conviction, and that his trial counsel was
ineffective during the punishment phase of his trial. We affirm.

Background


 In the evening of May 30, 2004, three vehicles were involved in a major
accident on Interstate 45, just north of Galveston at an intersection known as "the
Texas City Y." All three vehicles had been traveling north toward Houston. 
Trooper E. Vicknair was dispatched to the scene, where he learned from another
officer at the scene that two men died in the collision. Vicknair later learned that
the men were brothers. Vicknair deduced at the scene that they had been killed
instantly, and the Harris County Medical Examiner later determined that they died
from multiple blunt force injuries and trauma. The men had been in the open rear
bed of a Toyota pickup truck and were found between the guardrails of the
interstate and its frontage road. 

 Appellant had been driving a black Chrysler four-door vehicle and was also
involved in the collision. When he spoke with appellant at the scene, Vicknair
detected alcohol on appellant's breath. After conducting three field-sobriety tests
at the scene, Vicknair concluded that appellant was intoxicated. 

 Trooper Vicknair also spoke with Larry Brookins, who witnessed the crash.
Brookins stated that he saw appellant driving his Chrysler at a high rate of speed
before hitting the rear of a Ford SUV. Brookins saw the Ford SUV fishtail and
then "clip" the Toyota truck. According to Brookins, appellant appeared
intoxicated as he stepped out of his Chrysler after the crash. Brookins saw
appellant take a drink from a can of beer and heard him comment, "Wow, did I
cause all this? Did I do all this? Heck, man." 

 Yudell Valle-Garcia, the driver of the third vehicle, a Ford SUV, was
traveling at about 55 miles per hour when he saw appellant approaching his vehicle
from behind at a very high speed. Judging appellant's speed, Valle-Garcia braced
himself and tried to change lanes to avoid being hit, but he could not. He estimated
appellant's speed at 80 miles per hour when it made contact with Valle-Garcia's
SUV. Valle-Garcia did not know whether his SUV had made contact with another
vehicle before coming to a stop. He also observed that appellant appeared
intoxicated at the scene. 

 Norma Valladares, who had been driving the open-bed Toyota, lost control
of the truck after she felt impact and then made contact with the Interstate 45
guardrail. When she was able to stop the truck, Valladares noticed that its rear bed
was empty. Her husband was one of the two brothers who died at the scene.

 Officers who arrived at the scene observed that appellant's Chrysler had
crashed into Valle-Garcia's Ford SUV, and that the Toyota pickup truck had
traveled approximately 300 feet after striking the guardrail before coming to a stop. 
Breath tests performed on appellant revealed alcohol contents of .084 and .080, and 
a blood analysis done later showed an alcohol concentration of .08. The blood test
also revealed .04 milligrams per liter of alprazolam (Xanax). The Harris County
Medical Examiner explained at trial that combining Xanax and alcohol produced a
synergistic effect that enhanced the sedative effect of both substances.

 Trooper R. Adkins, a member of the Houston District and State Accident
Reconstruction Teams and an officer with nine and a half years' experience in
general crime and traffic enforcement, reconstructed the accident after reviewing
photographs and other compiled data. Adkins testified as an expert for the State. 
After completing the reconstruction, he spoke with both Brookins and Valle-Garcia, who confirmed Adkins's opinion of how the accident occurred. Adkins
also spoke with officers who arrived at the scene to investigate. Adkins
determined from his reconstruction that appellant's Chrysler struck the rear right
side of Valle-Garcia's Ford SUV, which caused it to spin counterclockwise; as the
SUV spun, it made contact with the rear left side of the Valladeres's Toyota pickup
truck. 

 Appellant's expert witness, Thomas Grubbs, has a master's degree in
mechanical engineering. From photographs taken at the scene of the accident,
which showed that the front fender of appellant's Chrysler was wrapped around the
inside of the rear, passenger-side wheel of Valle-Garcia's Ford SUV, Grubbs
testified that the two vehicles never separated after appellant first made contact
with Valle-Garcia's SUV. Grubbs theorized that Valle-Garcia's SUV made the
first contact with the Toyota truck and then quickly slowed down in the center lane
of traffic, where appellant struck it from behind. According to Grubbs, Valle-Garcia's SUV could not have gone "flying ahead" to hit the Valladeres pickup
"and all that sort of business" because appellant's Chrysler and Valle-Garcia's
SUV never separated after initial impact. Grubbs based his opinion solely on the
photographs taken at the scene and did not speak with any eyewitnesses. 

 The trial court granted counsel appointed for trial permission to withdraw
after he filed a notice of appeal and appointed new counsel for appeal. Newly
appointed counsel filed a motion for new trial and requested a hearing on the
motion, which the trial court denied. 

Factual Sufficiency

 In issue one, appellant argues that the evidence is factually insufficient to
support his conviction because the evidence does not establish that he caused the
accident that claimed the two men's lives. (1) 

A. Standard of Review

 When conducting a factual-sufficiency review, we view all of the evidence
in a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). We
will set the verdict aside only if (1) the evidence is so weak that the verdict is
clearly wrong and manifestly unjust or (2) the verdict is against the great weight
and preponderance of the evidence. Marshall v. State, 210 S.W.3d 618, 625 (Tex.
Crim. App. 2006) (citing Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000)). Under the first prong of Johnson, we cannot conclude that a conviction is
"clearly wrong" or "manifestly unjust" simply because, on the quantum of
evidence admitted, we would have voted to acquit had we been on the jury. 
Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the second
prong of Johnson, we cannot declare that a conflict in the evidence justifies a new
trial simply because we disagree with the jury's resolution of that conflict. 
Watson, 204 S.W.3d at 417. Our ability to substitute our judgment for the jury's
verdict is thus "very limited." See Marshall v. State, 210 S.W.3d at 625 (citing
Watson, 204 S.W.3d at 416-17). Before ruling that evidence is factually
insufficient to support a verdict under the second prong of Johnson, we must be
able to say, with some objective basis in the record, that the great weight and
preponderance of the evidence contradicts the jury's verdict. Watson, 204 S.W.3d
at 417. 

 In conducting a factual-sufficiency review, we must address the evidence
that appellant claims most undermines the jury's verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003), and we must accord "due deference" to
the fact finder, given that the trier of fact is in the best position to evaluate the
credibility and demeanor of witnesses, Marshall, 210 S.W.3d at 625, and alone
determines, therefore, what weight, if any, to place on conflicting evidence. Cain,
958 S.W.2d at 408; see Goodman v. State, 66 S.W.3d 283, 287 (Tex. Crim. App.
2001); Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991); Cleveland v.
State, 177 S.W.3d 374, 380 (Tex. App.--Houston [1st Dist.] 2005, pet. ref'd). We
measure the sufficiency of the evidence by the elements of the offense as defined
by a hypothetically correct jury charge. See Fuller v. State, 73 S.W.3d 250, 252
(Tex. Crim. App. 2002); Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App.
1997).

 Appellant committed the offense of intoxication manslaughter if he operated
a motor vehicle in a public place while he was intoxicated and caused the death of
another by accident or mistake resulting from that intoxication. See Tex. Pen.
Code Ann. § 49.08(a) (Vernon Supp. 2007). 

B. Discussion

 Appellant's factual sufficiency challenge focuses on the causation element
of his offense. See id. Specifically, appellant contends that the evidence is
factually insufficient to show that he--and not another driver--caused the collision
that resulted in the two deaths. To support this contention, appellant relies on the
opinion of his expert, Thomas Grubbs, and his interpretation of Defense Exhibit 9,
one of several photographs taken by police officers at the scene of the multiple-car
collision. 

 As addressed above, Grubbs disagreed with the opinion testimony of
Trooper Adkins and the testimony of the two eyewitnesses, Brookins and Valle-Garcia. Appellant contends that Grubbs's interpretation of Defense Exhibit 9
"contradicts the verdict because [the photograph] is inconsistent with any theory"
that appellant "initiated the accident." For Grubbs, the only explanation of this
exhibit is that Valle-Garcia's SUV hit the Toyota pickup first, which caused the
SUV to begin to spin counterclockwise, and that appellant's Chrysler then collided
with the spinning SUV, which caused the front bumper of appellant's car to peel
off and become entangled with the right rear wheel of Valle-Garcia's SUV. 
According to Grubbs, the extent of entanglement of the vehicles, as depicted in
Defense Exhibit 9 renders implausible the State's expert's opinion testimony that
the SUV was forced into the Toyota with sufficient force to cause the
complainants' deaths. Appellant thus contends that Grubbs's testimony so soundly
contradicts the jury's verdict that his conviction is "clearly wrong and manifestly
unjust" and thus requires that we reverse and remand for a new trial. See Watson,
204 S.W.3d at 414-15. This relief is appropriate, however, only if a result
different from that reached by the jury is required to prevent a manifest injustice,
see id. at 416-17, after considering all the evidence in a neutral light. Cain, 958
S.W.2d at 408. 

 The State presented the testimony of two eyewitnesses to the collision and a
DPS accident reconstruction expert, Trooper Adkins. The eyewitnesses' testimony
and Adkins's theory about how the collision occurred conflicted with Grubbs's
theory. According to Brookins, the first eyewitness, appellant's Chrysler struck
the rear of the SUV, which caused the SUV to fishtail and "kiss" the pickup. The
second eyewitness, Valle-Garcia, who was driving the SUV, remembered being
struck in the rear by appellant's car at a high rate of speed. Valle-Garcia could not
remember whether he struck the Toyota after the collision. Trooper Adkins, a
member of the DPS accident reconstruction team who regularly instructed highway
troopers on all levels of accident reconstruction, acknowledged that he did not
reconstruct the collision by inspecting the scene on the night of the accident. Like
Grubbs, he, too, examined the photographs taken at the scene and came to a
preliminary opinion about how the accident had occurred based on examining the
photographs. Adkins did not speak with the eyewitnesses, Brookins and Valle-Garcia, until after he had arrived at a preliminary theory of how the collision
occurred, based on examining the photographs taken at the scene of the collision,
including Defense Exhibit 9, which is identical to State's Exhibit 5, on which
Grubbs relied in reaching a different theory about how the collision occurred. 
Both Brookins and Valle-Garcia confirmed Trooper Adkins's preliminary
determination. 

 Reconciling the discrepancies in the accident-reconstruction theories
proffered by appellant's and the State's experts and the eyewitnesses was solely
within the province of the jury, see Goodman, 66 S.W.3d at 287, which was in the
best position to evaluate the credibility of these witnesses. See Marshall, 210
S.W.3d at 625. And though appellant criticizes testimony by Valle-Garcia, on the
grounds that he admitted drinking earlier in the day and that his testimony served
his self-interest to avoid liability for colliding with the pickup truck, the jury alone
was in a position to evaluate Valle-Garcia's credibility and the weight, if any, to
give his testimony about how the collision occurred. See id. 

 Because the jury was free to reject Grubbs's theory regarding how the
collision occurred and to accept the State's theory, as presented through the
testimony of Trooper Adkins and as confirmed by the eyewitnesses, see id., we
must accord due deference to the jury's having resolved the conflicting theories by
finding the theory of Trooper Adkins more credible. See Saxton, 804 S.W.2d at
914. We therefore hold that the evidence supporting appellant's conviction is
neither so weak that the jury's verdict is clearly wrong and manifestly unjust, nor
so against the great weight and preponderance of the evidence as to contradict the
jury's verdict on the causation element of appellant's intoxication-manslaughter
offense. See Watson, 204 S.W.3d at 417; Tex. Pen. Code Ann. § 49.08; Fuller,
73 S.W.3d at 252; Malik, 953 S.W.2d at 240. 

 We overrule appellant's first issue. 

Ineffective Assistance of Counsel



 In issue two, appellant contends that his trial counsel was ineffective
because she did not object based on lack of notice when the State introduced a
prior juvenile adjudication against appellant for murder during the punishment
phase of the trial. The record reflects that the State filed a notice of "Intent to
Introduce Extraneous Crimes and/or Bad Acts in Punishment Phase" in response to
appellant's pretrial request for that information, but that the prior adjudication at
issue here was not among the list of extraneous offenses included in the notice. 
The record also shows that counsel objected to the State's reliance on the prior
adjudication, though not on the grounds that the State did not provide the notice
required by article 37.07, section 3(g) of the Code of Criminal Procedure. See
Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g) (Vernon Supp. 2007); see also
Johnson v. State, 84 S.W.3d 726, 728-29 (Tex. App.--Houston [1st Dist.] 2002,
pet. ref'd) (construing article 37.07, section 3(g) and holding that including prior
conviction in enhancement paragraph of indictment satisfied notice requirement). 

 Instead, trial counsel argued, based on law later shown to be no longer in
effect, that the prior adjudication for murder was inadmissible under the law in
effect in 1992, when that offense was committed. Appellant thus contends that his
trial counsel was ineffective because she did not assert a legally tenable reason to
support exclusion and relied instead "on a weak argument with no chance of
success." Appellant further contends that, but for counsel's failure to object on
grounds of lack of notice, there is reasonable possibility that the result of his
punishment trial would have been different. To support the latter contention,
appellant relies on the closing argument by the State at punishment, in which the
prosecutor argued that appellant's convictions for the two intoxication-manslaughter offenses in this case showed a pattern of behavior that began with
appellant's earlier conviction for murder at age 14. 

 When presented with a claim of ineffective assistance of counsel, we apply
the two-step test found in Strickland v. Washington. 466 U.S. 668, 104 S. Ct. 2052
(1984). Strickland applies to claims of ineffectiveness of counsel during the
punishment phase of a noncapital case. See Hernandez v. State, 988 S.W.2d 770,
772 (Tex. Crim. App. 1999). 

 Strickland requires that appellant first demonstrate that his counsel's
performance was deficient by proving, by a preponderance of the evidence, that his
counsel's representation fell below the objective standard of professional norms. 
Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). An appellant who
succeeds at the first step must then show that this deficient performance prejudiced
his defense. Id. Because appellate review of defense counsel's representation is
highly deferential, "without the distorting effects of hindsight," Goodspeed v.
State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005), we presume that counsel's
actions fell within the wide range of reasonable and professional assistance. Bone,
77 S.W.3d at 833. Allegations of ineffective assistance must be firmly founded in
the record, Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005), but the
record on direct appeal will not normally suffice to show that counsel's
representation was so deficient and so lacking in tactical or strategic
decision-making as to overcome the presumption that counsel's conduct was
reasonable and professional. Bone, 77 S.W.3d at 833. This is because the original
trial record is undeveloped on the question of trial counsel's performance and will
rarely permit a reviewing court to evaluate fairly the merits of counsel's alleged
failings. See id. (quoting Thompson v. State, 9 S.W.3d 808, 813-14 (Tex. Crim.
App. 1999)). The Court of Criminal Appeals has encouraged affording trial
counsel an opportunity to respond before being "'denounced as ineffective.'" 
Goodspeed, 187 S.W.3d at 392 (quoting Rylander v. State, 101 S.W.3d 107, 111
(Tex. Crim. App. 2003). 

 Counsel appointed for appeal in this case filed a motion for new trial, but the
motion did not include a complaint that trial counsel was ineffective, and there was
no hearing on the motion. The record is silent, therefore, regarding trial counsel's
strategy. Appellant counters that the record is not completely silent concerning
trial counsel's strategy because the record shows that counsel sought to exclude the
prior juvenile adjudication. But this general objective by trial counsel sheds no
light on why she objected to admissibility of the prior adjudication on grounds
other than lack of notice. 

 A more critical factor for our analysis is that the record on appeal does not
affirmatively reflect that trial counsel lacked notice that the State would rely on
appellant's juvenile adjudication for murder--despite the absence of that
adjudication in the State's pretrial notice of the extraneous crimes or bad acts on
which the State intended to rely in the punishment phase of the trial. Indeed, the
State contends that trial counsel's preparedness in objecting to the admissibility of
appellant's prior adjudication for murder, albeit on a ground that did not succeed,
suggests that trial counsel did have notice that the State would attempt to introduce
this particular prior conviction and, therefore, lacked any tenable basis to object
based on lack of notice. (2) Accordingly, though appellant's contentions presume that
an objection by trial counsel based on lack of notice would have succeeded in
excluding evidence of that adjudication and thus prevented the prosecutor's
reliance on it in closing argument, the record on appeal is inconclusive concerning
whether appellant had notice that the State would rely on his juvenile adjudication
for murder. 

 The record does not, therefore, establish the premise that forms the basis of
appellant's claim of ineffectiveness--that appellant lacked notice. Accordingly,
appellant has failed to establish, by a preponderance of the evidence under the first
prong of the Strickland test, that his trial counsel's failure to object based on lack
of notice constituted performance that fell below the objective standard of
professional norms. See Bone, 77 S.W.3d at 833. Because appellant has thus
failed to satisfy the first prong of the test, see id., we need not analyze appellant's
issue under the second prong of Strickland analysis. 

 We overrule appellant's second issue.

Conclusion


 We affirm the judgment of the trial court.





 Sherry Radack


 Chief Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.


Do not publish. Tex. R. App. P. 47.2(b)


1. Appellant concedes that the evidence is legally sufficient.
2. The State's contention implies that the State supplemented its previously filed notice,
in response to appellant's pretrial request, of extraneous offenses and bad acts on
which it would rely at punishment by notifying appellant, through his trial counsel,
by means not demonstrated by the record, that it would also rely on appellant's prior
juvenile adjudication for murder during the punishment phase of the trial.