In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00023-CV

                                                ______________________________

 

 

 

                 IN THE INTEREST OF A.P., G.P., AND
L.P., CHILDREN

 

 

 

                                                                                                  


 

 

                                       On Appeal from the 336th
Judicial District Court

                                                             Fannin County, Texas

                                                       Trial Court
No. FA-10-39888

 

                                                   
                                               

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            Bonnie
Allen Pieroni, the sole appellant in this case, has filed a motion seeking to
dismiss her appeal.  Pursuant to Rule
42.1 of the Texas Rules of Appellate Procedure, her motion is granted.  Tex.
R. App. P. 42.1.

            We
dismiss the appeal.

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          April 12, 2011

Date Decided:             April 13, 2011






trial is not a final, appealable judgment. See Ortega v. State, 82
S.W.3d 748 (Tex. App.—Houston [1st Dist.] 2002, no pet.); Lowe v. State, 999 S.W.2d
537, 537 (Tex. App.—Houston [14th Dist.] 1999, no pet.). 
          Rule 21.4 of the Rules of Appellate Procedure provides that a defendant may file
a motion for new trial before, but no later than thirty days after the date when the trial court
imposes or suspends sentence in open court. Tex. R. App. P. 21.4. No sentence is
imposed or suspended as the separate result of a competency hearing, but only as a result
of the prosecution of the criminal charge. Accordingly, a motion for new trial is not an
appropriate method to attack the ruling on competency and has no effect on this
proceeding. The contention of error is overruled.
          Hart next contends the court erred by overruling his motion for directed verdict. His
argument is based on evidence that the gun was a BB gun, not a pellet gun as specifically
alleged in the indictment. When the gun was introduced, the sponsoring officer read the
identification stamping that identified it as a Powerline Model Number 93, CO2 BB gun.
          Hart argues under variance law that, because the indictment specified the gun was
a pellet gun, which varied substantially from proof it was a BB gun, he was entitled to a
directed verdict.


 "A 'variance' occurs when there is a discrepancy between the allegations
in the charging instrument and the proof at trial." Gollihar v. State, 46 S.W.3d 243, 246
(Tex. Crim. App. 2001). Only a material variance requires reversal. See Fuller v. State,
73 S.W.3d 250, 253 (Tex. Crim. App. 2002). "The widely-accepted rule, regardless of
whether viewing variance as a sufficiency of the evidence problem or as a notice-related
problem, is that a variance that is not prejudicial to a defendant's 'substantial rights' is
immaterial." Gollihar, 46 S.W.3d at 247–48; see Rojas v. State, 986 S.W.2d 241, 246
(Tex. Crim. App. 1998). The defendant has the burden of demonstrating surprise or
prejudice. Santana v. State, 59 S.W.3d 187, 194 (Tex. Crim. App. 2001). To determine
whether a defendant's "substantial rights" have been prejudiced, we must consider two
questions: whether the indictment, as written, informed the defendant of the charge
against her or him sufficiently to allow such defendant to prepare an adequate defense at
trial, and whether prosecution under the deficiently drafted indictment would subject the
defendant to the risk of being prosecuted later for the same crime. Gollihar, 46 S.W.3d at
248; Brown v. State, 159 S.W.3d 703, 709 (Tex. App.—Texarkana 2004, pet. ref'd).
          In Fuller, the Texas Court of Criminal Appeals held that a variance between an
indictment alleging the victim was "Olen M. Fuller" and the evidence at trial which referred
to the victim as "Mr. Fuller" or as "Buddy" was an immaterial variance. Fuller, 73 S.W.3d
at 254. Similar to Fuller, the variance in this case does not involve a statutory element of
the offense and there is no showing that Hart was surprised or prejudiced by the variance. 
The indictment, as written, sufficiently informed Hart of the charge against him and the
variance would not subject Hart to another prosecution for the same offense. The variance
is immaterial. The contention of error is overruled.
          Hart next raises several claims of error in connection with the admission of evidence
in connection with the BB gun. He contends the court erred by allowing the State to
designate and name an expert witness in midtrial to testify about the gun. A "standard"
discovery order was entered by the trial court that directed both parties to disclose their
expert witnesses no later than twenty days in advance of trial. Hart, in an abundance of
caution, filed a request for a hearing to determine the State's compliance with that order. 
A hearing was held, at which the delivery of evidence expected to be used at trial was
discussed. The court reiterated that, under the discovery order, evidence was to be turned
over no later than thirty days


 before trial, unless a good faith or reasonable cause
exception applied. 
          The complained-of testimony is that of police sergeant Chris Brooks. He testified
about a number of matters, including videotapes, an interview with the victim, his
examination of the location of the attack, and characteristics of the gun. At no point during
his testimony was he offered or qualified as an expert witness, nor did the court ever
recognize him as such. During one discussion out of the jury's presence, the prosecutor
clearly stated that Brooks was being used as a lay witness only. His testimony describing
the gun was not based on "scientific, technical, or other specialized knowledge," but
explicitly on his personal experiences using a BB or pellet gun. Accordingly, the complaint
that he was improperly permitted to testify as an expert despite the State's failure to
disclose that he would be used as such is without foundation in the record. Further, there
was no objection suggesting that his testimony was the sort that could only be provided by
an expert. The contention of error is overruled.
          Hart also contends the court erred by refusing to allow him to have Brooks
demonstrate to the jury that the gun was incapable of being fired, and by refusing to allow
him to have the gun tested by his own expert to determine whether it was capable of firing. 
As pointed out, the barrel of the gun was plugged with some type of rubbery substance,
and the slide for loading the gun was "glued in." Under those circumstances, the gun was
clearly inoperable when taken into the possession of the police three days after the attack. 
          Hart contends he should have been allowed his own expert witness because the
State used its own expert to examine and testify about the gun.


 We have already
determined the witness was not qualified as, and did not testify as, an expert. The
argument fails. The contention of error is overruled. 
          Hart further contends he should have been allowed to demonstrate that the gun was
incapable of firing and that Brooks' belief that someone could "shoot out" the obstruction
in the barrel had no basis in reality. The reality is that the requested act could not have
occurred during the trial. The evidence unequivocally shows it was impossible to load the
gun with a BB, because both ends of the barrel were inaccessible—the slide for loading
was glued shut and the end of the barrel was plugged. It might have been possible to pull
out the obstruction for loading, but such removed material would then have to be reinserted
to determine whether one could shoot through the identically reinserted obstruction. It is
apparent such a demonstration was not likely to produce an accurate result. The trial court
did not abuse its discretion in disallowing the demonstration. Further, the evidence clearly
demonstrated to the jury that the gun was incapable of firing. Thus, additional evidence
to that effect by a live demonstration would at best be cumulative of evidence already
before the jury. 
          Under Rule 403, all relevant evidence is admissible unless "its probative value is
substantially outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless presentation of
cumulative evidence." Tex. R. Evid. 403. Arguably, because part of the definition of
deadly weapon includes anything that "in the manner of its use or intended use is capable
of causing death or serious bodily injury,"


 the question of whether a gun works is relevant
to the issue of whether a deadly weapon was used. However, because the evidence in this
case unequivocally shows that the gun was inoperable, a live demonstration would at best
have been cumulative of the evidence already before the jury. We do not find that the trial
court abused its discretion by refusing to allow the introduction of the demonstrative
evidence suggested. See Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.
1990) (op. on reh'g).
          Under this contention, Hart also contends he should have been permitted to present
an identical BB gun to the jury—one that had not been altered and clearly showed the
brass end of the barrel to indicate the gun was a BB gun, not a firearm. In support of his
position that similar items may be introduced before the jury, he cites three cases, each
of which involved situations where the actual item was not available for the jury's
inspection, and introduction of a similar item was shown to assist the fact-finder in its
determination.


 In this case, the actual gun was before the jury, and there is no
persuasive reason articulated that would require an identical (but unaltered) gun to be
admitted into evidence. We find no abuse of discretion. See id. 
          Hart next contends the court erred by allowing the State to introduce a pen packet
not previously and timely provided to counsel as required by the trial court's discovery order
and the court's prior ruling on Hart's compliance motion. The pen packet was from
Missouri and contained documents showing two convictions in that state. The packet was
certified June 30, 2004, by the Missouri Department of Corrections, although the State's
counsel informed the trial court it had been received June 29. A new pen packet was
prepared and introduced reflecting the correct certification date. Counsel objected to its
admissibility because it was not timely provided and because the packet contained a Texas
judgment that had been faxed to Missouri. Counsel provides no authority to support his
argument.


 He does not suggest surprise, because he was informed of the
enhancements, along with the cause numbers of the Missouri convictions, by a document
filed October 20, 2003, and notice was therefore provided and timely. See Brooks v. State,
957 S.W.2d 30, 31 (Tex. Crim. App. 1997). He suggests no way in which he was harmed
by the late presentation. 
          It is obvious that the actual packet was not provided before trial, as required by the
court's "Standard Discovery Order." Further, this type of documentary evidence is the type
contemplated by the order. However, the order contains specific limiting language by
which it requires the State to turn over all documents that might be offered at trial and
"which are in the possession, custody or control of the State or any of its agencies." This
pen packet was not in the possession, custody, or control of the State until midtrial. 
Accordingly, the order was not violated on its face, and no error has been shown. 
          Hart next contends the trial court erred by failing to suppress his written statement. 
He argues he was coerced by the officer into giving a statement and thus his statements
and the DNA evidence thereafter obtained should have been suppressed. Our review of
the record reflects that this is a misstatement. The motion to suppress evidently covered
Hart's written consent to obtain DNA samples and a consent to search the residence. 
There is no statement or confession in evidence. 
          In our review of the trial court's ruling on suppression, we recognize that the trial
court is the exclusive trier of fact and judge of the credibility of the witnesses, and our
review of its ruling is limited to a determination of whether the trial court abused its
discretion. The general rule is that an appellate court should afford almost total deference
to a trial court's determination of the historical facts that the record supports, especially
when the trial court's fact-findings are based on an evaluation of credibility and demeanor. 
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).
          Consent must be voluntary to be effective, and if that consent is the result of
coercion, the consent is involuntarily obtained. In determining whether consent was
voluntary, we look to certain relevant factors, such as: the youth of the accused; the
education of the accused; the intelligence of the accused; the constitutional advice given
to the accused; the length of the detention; the repetitiveness of the questioning; and the
use of physical punishment. Reasor v. State, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000); 
State v. Hunter, 102 S.W.3d 306, 311 (Tex. App.—Fort Worth 2003, no pet.). Additionally,
testimony by law enforcement officers that no coercion was involved in obtaining the
consent is evidence of the consent's voluntary nature. Martinez v. State, 17 S.W.3d 677,
683 (Tex. Crim. App. 2000); Hunter, 102 S.W.3d at 311. Consent is not rendered
involuntary merely because the accused is under arrest. Johnson v. State, 68 S.W.3d 644,
653 (Tex. Crim. App. 2002); Harrison v. State, 144 S.W.3d 82, 88 (Tex. App.—Fort Worth
2004, pet. granted). A police officer's failure to inform the accused that he or she may
refuse consent is a factor to consider in determining the voluntariness of consent; however,
the absence of such information does not automatically render the accused's consent
involuntary. Johnson, 68 S.W.3d at 653; Levi v. State, 147 S.W.3d 541, 545 (Tex.
App.—Waco 2004, pet. ref'd).
          The evidence consisted of a videotape (and its transcription) of the process through
which consent was obtained. Hart points to the parts of the process where he was told that
he "needed to give the officers what they needed in order to clear his name," that it would
be better off in the long run for him and his family that the police go to his residence. There
is no evidence of physical mistreatment; there is evidence Hart was in custody at the time
(although the officer was uncertain himself); and that Miranda


 warnings were read to him. 
Hart was in his early forties at the time of the offense, so youth was not a consideration. 
Although there was a competency hearing, the evidence in that regard showed he had at
least average intelligence, and there was no indication he was not competent at the time
he gave consent. Although unclear, the trial court was informed that Hart had been with
the police approximately an hour before being given the Miranda warnings and that the
consent was given about four hours after he came to the police station. The record does
not show any activity by the officers that would be such as to overpower the free will of the
defendant, and we do not find that the court abused its discretion by denying the motion
to suppress. 
          Hart next contends the trial court erred by failing to grant him a new trial after it was
discovered that juror Stephanie Flynn did not disclose she had been previously married to
Paris police officer Jeff Kinslow, nor did she disclose that Kinslow's uncle had been the
victim of a capital murder during an armed robbery. This information was brought to the
court's attention during the hearing on Hart's motion for new trial. Hart argues Flynn did
not respond truthfully during voir dire and, because of this failure, a juror who he would
have struck was on the jury. 
          When a juror withholds material information during voir dire, the parties are denied
the full opportunity to intelligently exercise their challenges, thus hampering their selection
of a disinterested and impartial jury. Franklin v. State, 138 S.W.3d 351, 355 (Tex. Crim.
App. 2004). A defendant is entitled to reversal if the omission is material and the
defendant has exercised due diligence in eliciting that information. Id. at 356. 
          Counsel asked the panel, "Who all here is involved in law enforcement or has a
close friend, family member, or relative that is involved or has been involved in law
enforcement?" Flynn did not respond. However, Flynn was divorced seven months earlier
from the police officer, which necessarily means that neither Kinslow nor his relatives were
family members or relatives. It is likely she also does not consider her ex-husband a close
friend, and the ex-husband's uncle had been killed over ten years earlier. 
          In his closing questions to the jury panel, Hart's counsel also asked jurors to
respond if they felt that, "You know, if you had asked that question, I would have raised my
hand; and there is no way in the world they would pick me to be on that jury?" The answer
to that question is one that is necessarily internalized, and there is no evidence that bears
on the matter. Cf. Armstrong v. State, 897 S.W.2d 361, 363–64 (Tex. Crim. App. 1995)
(existence of ongoing close friendship and relationship not reversible when questions
asked not specific enough to draw out the answer).
          The granting or denying of a motion for new trial lies within the discretion of the trial
court. We do not substitute our judgment for that of the trial court, but rather decide
whether the trial court's decision was arbitrary or unreasonable. Salazar v. State, 38
S.W.3d 141, 148 (Tex. Crim. App. 2001); Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App.
1995). Based on the information before the trial court, we cannot find that the court's
decision was unsupportable, nor can we say the questions were not sufficiently specific to
the nondisclosed information to allow a conclusion that Flynn answered untruthfully. The
contention of error is overruled.
          Hart finally contends the trial court erred by showing the jury photographs of the
tattoos of nude women on his thighs. He objected at trial, arguing they were more
prejudicial than probative because of their subject matter, specifically in light of the victim's
previous testimony she could not identify the tattoos—but did testify there were tattoos on
the thighs of her attacker. Hart offered to stipulate there are tattoos on his thighs. The
court overruled Hart's objections and allowed admission of the photographs.


 
          Counsel argues the photographs of the tattoos were of such graphic subject matter
they would sway the jury in some irrational and emotional fashion. The stipulation would
undeniably have served to meet the State's needs in this instance, especially since the
victim could not describe their appearance. The admission of evidence subject to this
objection is controlled by Tex. R. Evid. 403, which provides (among other things) that
evidence may be excluded if its probative value is substantially outweighed by the danger
of unfair prejudice. 
          Once a defendant objects to photographic evidence on the basis of Rule 403, the
trial court must weigh its probative value against its potential for unfair prejudice. Narvaiz
v. State, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992). An appellate court reviewing the
trial court's decision may reverse only for an abuse of discretion, i.e., only when the trial
court's decision was outside the zone of reasonable disagreement. Id. The trial court must
consider the "host of factors affecting probativeness . . . and balance those factors against
the tendency, if any, that the photographs have to encourage resolution of material issues
on an inappropriate emotional basis." Ladd v. State, 3 S.W.3d 547, 568 (Tex. Crim. App.
1999).
          In this case, although the tattoos are graphic representations of a nude woman, they
are not such that we believe they would necessarily sway a jury into resolving the case
based on emotion rather than reason. We find the decision to be within the zone of
reasonable disagreement. The contention of error is overruled.
          We affirm the judgment.

                                                                           Donald R. Ross
                                                                           Justice
 

Date Submitted:      June 2, 2005
Date Decided:         August 24, 2005

Publish