**AFFIRMED; Opinion Filed February 28, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00195-CR

### KEVIN DEWAYNE JOHNSON, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 380th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 380-81811-2015**

# MEMORANDUM OPINION
Before Justices Francis, Stoddart, and Whitehill
Opinion by Justice Stoddart

A jury convicted Kevin Dewayne Johnson of theft under $1,500 with two previous convictions and sentenced him to two years' confinement. In five issues, Johnson argues the evidence is insufficient to support the conviction and the trial court erred by denying his requests for jury instructions on a lesser-included offense and community supervision. We affirm the trial court's judgment.

FACTUAL BACKGROUND

Ignacio Lopez worked as a loss prevention officer for a JCPenny store. Sephora is a department within the JCPenny store and Lopez's duties included protecting Sephora's merchandise. Sephora is a "high shrink department" from which many items are stolen.

Lopez monitored the JCPenny sales floor in person and with closed-circuit cameras. In July 2015, a sales associate alerted Lopez to a man, identified at trial as appellant, carrying a plastic bag in the Sephora department. Shoplifters frequently use bags as a tool to steal merchandise. Lopez testified he saw appellant select a night cream and a wrinkle cream without looking at the items' prices and put them into his plastic bag. He testified: "After concealment was completed, [appellant] walked straight to the cash register." The creams cost $50 each.

Lopez followed appellant to the check-out counter and stood a few feet away and watched to see whether appellant paid for the items or attempted to return them. He could not hear any discussion between appellant and the cashier. Appellant removed three items from his plastic bag and completed a "no-receipt return." Lopez explained that JCPenny's return policy allows customers to return merchandise without receipts in exchange for a voucher that can be used at any JCPenny location. In exchange for the three items, the cashier gave appellant a card, the front of which states: "JCPenny Merchandise Credit." Appellant accepted the merchandise credit for $250, which included the value of the night and wrinkle creams he collected in Sephora. After appellant received the merchandise credit, Lopez apprehended him. The jury viewed footage from the in-store closed-circuit cameras showing appellant in the Sephora department and making the no-receipt return.

Officer Cliff Turrubiarte with the Plano Police Department arrived at the JCPenny store and searched appellant's plastic bag. He testified: "As I was searching the bag, [appellant] told me that he did take the night cream and the wrinkle cream, but the other Peter Thomas clinic cream was his wife's and that he did not steal it from JCPenny."

**A.      Variance**

In his first issue, appellant asserts the evidence is insufficient to establish theft of United States currency.  The indictment alleged that appellant intentionally and knowingly appropriated property, "namely: lawful United States currency, of the value of less than Fifteen Hundred Dollars (1,500), without the effective consent of JC Penny's [sic], the owner of the property."  Appellant argues the State sought to prove theft of a JCPenny merchandise credit, which is not currency, and the variance between what the State alleged and what was proven is material.

In cases involving a sufficiency claim based on a variance between the indictment and the evidence, rather than reviewing the evidence under the traditional sufficiency standards, we consider the materiality of the variance.  *See Fuller v. State*, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002); *Johnson v. State*, No. 05-15-00060-CR, 2016 WL 1733610, at *5 (Tex. App.—Dallas Apr. 28, 2016, no pet.) (mem. op., not designated for publication).  A variance only renders the evidence insufficient when it is material.  *Fuller*, 73 S.W.3d at 253; *Johnson*, 2016 WL 1733610, at *5.  A variance is material if it (1) deprived the defendant of sufficient notice of the charges against him such that he could not prepare an adequate defense, or (2) would subject him to the risk of being prosecuted twice for the same offense.  *Fuller*, 73 S.W.3d at 253; *Johnson*, 2016 WL 1733610, at *5.  The burden of demonstrating the materiality of a variance rests with the defendant.  *Santana v. State*, 59 S.W.3d 187, 194 (Tex. Crim. App. 2001); *Johnson*, 2016 WL 1733610, at *5.

Appellant does not argue he lacked notice of the charges against him such that he could not prepare an adequate defense or he could be subject to the risk of being prosecuted twice for the same offense.  Rather, he argues, the State failed to prove what it alleged: theft of "lawful United States currency," and the variance is material "because it is both per se material and

because part of Appellant's defense at trial was that he did not take U.S. currency." Appellant's argument does not comport with the standard against which we determine whether a variance is material.

Theft occurs when a person, without the owner's effective consent, unlawfully appropriates property with the intent to deprive its owner of the property. TEX. PENAL CODE § 31.03(a), (b). In this context, "property" includes a document that represents anything of value. *Id.* § 31.01(5)(C). The JCPenny merchandise credit is a document representing something of value—the right to claim up to $250 in JCPenny merchandise. Thus, the merchandise credit is "property" subject to being misappropriated within the meaning of the theft statute, and the issue is whether theft of the card presents a material variance from the indictment's allegation that appellant misappropriated "lawful United States currency."

In the case before us, the record shows appellant was not surprised by the variance and his defense was not prejudiced by the State's failure to prove the property description as alleged. During jury selection, appellant's counsel spoke with the venire about currency and United States currency and asked whether potential jurors consider "Kyle bucks"[1] to be currency. He also asked potential jurors about the difference between a coupon and cash. He inquired whether people would convict his client if the indictment alleged appellant stole from a Kohl's store and the evidence showed the theft occurred at Macy's. Additionally, during opening statement, counsel for appellant stated:

> Kevin was trying to commit theft. He was. We're not going to be here to dispute the color of the sky, we're not going to be here disputing things that can't reasonably be disputed.
> . . .

---

[1] Kyle Therrian represented appellant at trial. It appears counsel used the term "Kyle Bucks" to describe fake currency he could create that would not have value as a way to discuss the difference between legal currency and non-currency with the venire. For example, he asked the venire whether Kyle Bucks are currency and why they considered or did not consider them currency.

[W]hen it comes time to decide whether or not they're [JCPenny] deprived of anything of value, whether or not Kevin acquired anything of value, whether or not what he received was something that he could exchange for value. So that's issue No. 1.

Issue No. 2, the indictment alleges that what Kevin appropriated was lawful U.S. currency, the value of which is less than $1500. We talked about this in jury selection, you know, whether or not the State has to prove what it is they've alleged, whether if you see that somebody has tried to commit a theft or made you think a theft was completed, which is something we would disagree with, but maybe you've come to that conclusion. The ultimate question is whether it was U.S. currency, and I think the answer is a resounding no.

We conclude that the asserted variance in this case is not material and does not render the evidence insufficient to support appellant's conviction. Appellant makes no argument that he lacked notice of the charges against him such that he was unable to prepare a defense or the variance could subject him to the risk of being prosecuted twice for the same offense. The record shows appellant was fully aware of the discrepancy during jury selection and his opening statement and he made it a key piece of his defense. Appellant began addressing the variance well before the State began presenting evidence. Thus, even if we accept appellant's argument that a JCPenny merchandise credit is not lawful United States currency, appellant has not met his burden of demonstrating the materiality of the variance. We overrule appellant's first issue.

## B. Sufficiency of the Evidence

In his second, third, and fourth issues, appellant argues the evidence is insufficient to establish JCPenny as the owner of United States currency, establish the absence of JCPenny's effective consent because it knew about appellant's fraud when value was loaded onto the merchandise credit, and establish appellant appropriated something of value because monetary instruments have no value without the maker's ability and intent to honor.

We review a challenge to the sufficiency of the evidence on a criminal offense for which the State has the burden of proof under the single sufficiency standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Acosta v. State*, 429 S.W.3d 621, 624–25 (Tex. Crim. App.

2014). Under this standard, the relevant question is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2011) (footnotes omitted).

This standard accounts for the factfinder's duty to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* When analyzing legal sufficiency, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id.* When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and therefore defer to that determination. *Id.* Direct and circumstantial evidence are treated equally: Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id.* We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *See Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011) (discussing *Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997)).

Reversal on evidentiary sufficiency grounds is restricted to "the rare occurrence when a factfinder does not act rationally." *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *see Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014) (stating that a reviewing court should not act as a "thirteenth juror"). In other words, the appellate scales are weighted in favor of upholding a trial court's judgment of conviction. *Winfrey v. State*, 323 S.W.3d 875, 879 (Tex. Crim. App. 2010).

As applicable here, a person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property. TEX. PENAL CODE § 31.03(a). Appropriation of property is unlawful if it is without the owner's effective consent. *Id.* § 31.03(b)(1).

*1.      Ownership*

In his second issue, appellant challenges the evidence showing the owner of the stolen property. He asserts the State failed to prove JCPenny as the owner of the property, as alleged in the indictment. Appellant appears to argue the evidence shows Sephora owned the stolen property.

The penal code defines "owner" as a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor. TEX. PENAL CODE § 1.07(a)(35). "Although the name of the owner is not a substantive element of theft, the State is required to prove, beyond a reasonable doubt, that the person (or entity) alleged in the indictment as the owner is the same person (or entity) . . . as shown by the evidence." *Garza v. State*, 344 S.W.3d 409, 412 (Tex. Crim. App. 2011) (quoting *Byrd v. State*, 336 S.W.3d 242, 251 (Tex. Crim. App. 2011)).

Here, Lopez described Sephora as both a department and a store within JCPenny, and testified JCPenny is bound to protect Sephora merchandise. JCPenny's no-receipt return policy allows a person to return merchandise, including Sephora merchandise, without a receipt in exchange for a merchandise credit that can be used at any JCPenny location. When a person returns items to a cash register inside of Sephora, the JCPenny return policy applies. Generally when merchandise is returned in Sephora, a person is given a Sephora credit. However, when Sephora runs out of Sephora merchandise credits, JCPenny credits are used instead. The card given to appellant states: "JCPenny Merchandise Credit."

The receipt generated when appellant returned the merchandise, which was admitted into evidence, does not have a heading on it to indicate the name of the store that processed the return, but Lopez stated the exchange occurred between appellant and JCPenny. The State asked Lopez: "Was it JCPenny through the Sephora store?" and he replied "yes."

Reviewing the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found JCPenny owned the stolen property. Lopez's testimony and the JCPenny merchandise credit admitted into evidence are sufficient for a rational trier of fact to conclude Sephora is a department within JCPenny, JCPenny owns Sephora merchandise, and when, as here, Sephora merchandise is returned, the party making the return may receive a JCPenny credit to purchase other goods from JCPenny. JCPenny issued the merchandise credit obtained by appellant. Through this analysis, rational jurors could have concluded JCPenny was the "owner" and had title to or possession of the property stolen. We overrule appellant's second issue.

### 2. Consent to theft

In his third issue, appellant argues the evidence is insufficient to establish the absence of the owner's effective consent to the theft because JCPenny loaded value, if any, onto the card with knowledge of appellant's actions. The State was required to prove appellant unlawfully appropriated the property without JCPenny's effective consent. *See id.* §§ 31.03(a), (b)(1).

Consent is not effective if it is "given solely to detect the commission of an offense." *Id.* § 31.01(3)(D).

Lopez testified that although he was suspicious of appellant's behavior before appellant completed the no-receipt return, he did not intervene before the transaction was completed because no offense occurred until appellant signed for the merchandise credit. Prior to completing the no-receipt return, Lopez could not know whether appellant would purchase the

creams or return them. When the State asked Lopez whether he was "aware of anyone who consented to [appellant] returning those items for cash value without having purchased them first" and Lopez replied "no."

Reviewing the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found JCPenny did not consent to the theft or any consent given was solely to detect the commission of the offense. Therefore, the jury could have concluded the State proved appellant unlawfully appropriated the property without JCPenny's effective consent. We overrule appellant's third issue.

### 3. Value of JCPenny Merchandise Credit

In his fourth issue, appellant asserts the evidence is insufficient to establish he appropriated something of value because "monetary instruments have no value without the maker's ability and intent to honor." The State responds the value of the merchandise credit is its face value. Property subject to theft can be real property, personal property, or "a document, including money, that represents or embodies anything of value." *Id.* § 31.01(5). Here, the State alleged and was required to prove appellant appropriated property "of the value of less than Fifteen Hundred Dollars (1,500.00)." *See Simmons v. State*, 109 S.W.3d 469, 472 (Tex. Crim. App. 2003).

The State and appellant rely on *Simmons* to support their arguments on this issue. Simmons was charged with theft of two checks with value between $1,500 and $20,000 after he accepted checks as payment for his auto theft and car storage insurance claims. *Simmons*, 109 S.W.3d at 470, 472. The court of appeals reversed his conviction on grounds the evidence was insufficient to prove the value of the checks because the State failed to show the drawer of the check had sufficient funds to cover the checks at the time Simmons came to possess the checks. *Id.* The court of criminal appeals reversed the court of appeals. *Id.* at 479. The *Simmons* court

concluded the amount written on the face of the checks and signed by the drawer is prima facie evidence of the checks' value and is sufficient to show its value. *Id.* at 475.

Here, the State did not charge appellant with theft of a check, there is no evidence appellant stole a check, and recognizing a JCPenny merchandise credit is not a check, we will apply the legal principles from *Simmons* as urged by the parties. The face value of the merchandise credit is $250, and the evidence established at least $100 of that value resulted from appellant's fraudulent no-receipt return. Applying *Simmons*, the written value of the merchandise credit, absent disputed evidence, is sufficient to show the credit was less than $1,500, as alleged in the indictment. *See id.* at 477.

Other evidence in the record also shows the State proved the merchandise credit had value of less than $1,500 as alleged. Lopez testified the credit is "the same thing as money at JCPenny" and the value placed on the card is one dollar per dollar of merchandise returned. Lopez described the credit as being "basically a debit card" that is worth the cash value that has been loaded onto it. The merchandise credit is a promise by JCPenny to exchange the value of the credit for merchandise. Further, Lopez testified the merchandise credit held value to appellant because he could have "walk[ed] across the street to a check place and [sold] it [the merchandise credit] for half the value of it. By that time, we lose."

Although there is evidence in the record that JCPenny could cancel the value assigned to a merchandise credit, the fact a check will not be paid when tendered was not persuasive to the *Simmons* court. *See id.* at 475. Similarly, here, the fact JCPenny could have canceled the credit is not dispositive.

Reviewing the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found the value of the merchandise credit was less than $1,500. We overrule appellant's fourth issue.

## C.     Lesser-Included Offense

In his fifth issue, appellant argues the trial court erred by denying his request for a lesser-included offense instruction on attempted theft.  With respect to criminal attempt, the penal code states: "A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended."  TEX. PENAL CODE § 15.01(a) (criminal attempt).

We review the trial court's decision to submit or deny a lesser included offense instruction for an abuse of discretion.  *Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004).  We apply a two-pronged test to determine if the trial court should have given a jury charge on a lesser-included offense.  *Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007).  We first determine if the proof necessary to establish the charged offense includes the lesser offense.  *Id*.  If it does, we then review the evidence to determine that if appellant is guilty, he is guilty only of the lesser offense.  *Id*. at 536.

The second step is a question of fact and is based on the evidence presented at trial.  *Cavazos v. State*, 382 S.W.3d 377, 383 (Tex. Crim. App. 2012).   This step requires us to determine whether "there is some evidence in the record which would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense."  *Rice v. State*, 333 S.W.3d 140, 145 (Tex. Crim. App. 2011).   This evidence must show the lesser-included offense is a "valid, rational alternative to the charged offense."  *Id*.  Moreover, it "is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense.  Rather there must be some evidence directly germane to a lesser-included offense for the factfinder to consider before an instruction on a lesser-included offense is warranted."  *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997).

The State concedes attempted theft is a lesser-included offense of theft, *see* TEX. CODE CRIM. PROC. art. 37.09(4), but argues the evidence does not satisfy the second prong of the analysis. Based on the arguments in his third and fourth issues, appellant asserts he only committed attempted theft because JCPenny consented to the theft and he did not appropriate something of value. Our discussion above negates each of these arguments.

Further, appellant argues the cashier loaded value onto the card with full knowledge of his fraudulent actions. However, the record shows the cashier did not know about appellant's actions when the cashier executed the no-receipt return. While Lopez was aware appellant had not paid for the creams he returned, Lopez did not convey his suspicions about appellant's activity to the cashier. Appellant also re-urges his argument that he did not receive anything of value and, therefore, he is only guilty of attempted theft. For the reasons discussed above, we do not find this argument persuasive.

Having reviewed the entire record, we conclude there is no evidence that if appellant is guilty, he is guilty only of attempted theft. Therefore, the trial court did not abuse its discretion by denying appellant's request to give a lesser-included offense instruction on attempted theft. We overrule appellant's fifth issue.

**D.** **Instruction on Community Supervision**

In his sixth issue, appellant asserts the trial court erroneously denied his request to instruct the jury to consider making a recommendation that the trial court suspend the imposition of his sentence. Appellant argues section 15 of article 42.12 of the code of criminal procedure permitted him to seek community supervision from the jury despite failing to file a sworn motion alleging the non-existence of prior felony convictions. The State responds that appellant was not eligible for community supervision and he did not, and could not, file the sworn motion required by section 4(e) of article 42.12 and, therefore, the trial judge did not err by denying his request.

When addressing a claim of jury charge error, we first decide whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If we find error, we then analyze that error for harm. *Id.* The trial court is required to give a written charge to the jury distinctly setting forth the law applicable to the case. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14.

When interpreting statutes as appellant requests we do here, we look to the literal text of the statute in question and attempt "to discern the fair, objective meaning of that text at the time of its enactment." *State v. Schunior*, PD-0526-15, 2016 WL 6471981, at *4 (Tex. Crim. App. Nov. 2, 2016) (quoting *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)). Ordinarily we give effect to the plain meaning of the text. *Id.* (citing *Boykin*, 818 S.W.2d at 785). When interpreting the literal text of a statute, we "presume that every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible." *Id.* (quoting *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997)).

Two provisions of article 42.12 of the code of criminal procedure are at issue: section 4(e) and section 15(a)(2-a). Section 4 is titled "Jury Recommended Community Supervision" and subsection (e) states a "defendant is eligible for community supervision under this section

only if before the trial begins the defendant files a written sworn motion with the judge that the defendant has not previously been convicted of a felony in this or any other state, and the jury enters in the verdict a finding that the information in the defendant's motion is true." TEX. CODE CRIM. PROC. ANN. art. 42.12, § 4(e). Section 15 is titled "Procedures Relating to State Jail Felony Community Supervision" and subsection (a)(2-a) states: "In any case in which the jury assesses the punishment, the judge must follow the recommendation of the jury in suspending the imposition of a sentence or ordering a sentence to be executed." *Id.* art. 42.12, §15(a)(2-a). Appellant was convicted of a state jail felony. He argues that section 15 provides independent procedures for assessing community supervision in state jail felony cases and permitted him to seek community supervision from the jury despite not filing the sworn motion required by section 4(e).

Appellant's argument is not supported by the text of the statute. Section 4 of article 42.12 is a general provision that applies in cases such as this one when the jury is responsible for recommending community supervision. *See id.* art. 42.12, § 4. Nothing in the code limits the application of section 4 to non-state jail felonies. Rather, sections 4 and 15 work in tandem. Section 4(e) provides the process by which a criminal defendant informs the trial court that he seeks community supervision and that he meets at least one requirement for eligibility. *Id.* art. 42.12, § 4(e). Once eligibility is established, section 15 provides procedures relating to community supervision for state jail felonies. *Id.* art. 42.12, § 15.

Reading the text of section 4 as a whole, it is clearly intended to apply to convictions for state jail felonies unless noted otherwise. Section 4(d)(2) states a defendant is not eligible for community supervision under section 4 if the defendant is convicted of a state jail felony for which suspension of the imposition of the sentence occurs automatically under section 15(a). *See id.* art. 42.12, § 4(d)(2). If we were to apply appellant's argument that section 4 does not

apply to provisions under section 15, section 4(d)(2) would be a nullity. Appellant's argument fails to give effect to each word, phrase, clause, and sentence of article 42.12. *See Schunior*, 2016 WL 6471981, at *4.

Further, article 42.12 includes numerous general provisions in addition to section 4 that govern varying aspects of community supervision. *See, e.g.,* TEX. CODE CRIM. PROC. ANN. art. 42.12, §§ 9 (presentence investigations), 10 (authority to impose, modify, or revoke community supervision), 11 (basic conditions of community supervision), 12 (confinement as a condition of community supervision), 19 (fees). If we apply appellant's argument that the general provisions of article 42.12, such as section 4, are separate from and apply independently of the specific provisions such as section 15, we would hinder the trial court in ways not contemplated by the statute. For example, if section 15 stands alone, then the trial court would lack any authority to modify the terms of community supervision because section 15 does not address modifications and section 10 would not apply. *See id.* art. 42.12, §§ 10, 15. Likewise, appellant's argument would mean that the trial court cannot order a person convicted of a state jail felony to pay fees while on community supervision because section 15 does not provide for the payment of fees and section 19 addressing the payment of fees would not apply. *See id.* art. 42.12, §§ 15, 19. When the legislature intended a section of article 42.12 to only apply to a defendant convicted of a state jail felony, the legislature made its intention clear through the heading in section 15 (procedures relating to state jail felony community supervision) or through specific language such as that found in section 20A(a)(1): "This section applies only to a defendant who is granted community supervision . . . for an offense punishable as a state jail felony . . ."

Applying the statutory interpretation method provided by the court of criminal procedure in *Schunior*, we conclude a conviction for a state jail felony under section 15 does not discharge a defendant's duty to file a sworn motion pursuant to section 4(e). Having found no error in the

court's denial of appellant's request for a jury instruction under section 15, we overrule appellant's sixth issue.

CONCLUSION

We affirm the trial court's judgment.

/Craig Stoddart/
CRAIG STODDART
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
160195F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

KEVIN DEWAYNE JOHNSON, Appellant

No. 05-16-00195-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 380th Judicial District Court, Collin County, Texas
Trial Court Cause No. 380-81811-2015.
Opinion delivered by Justice Stoddart.
Justices Francis and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 28th day of February, 2017.